2020 IL App (1st) 171202

1-17-1202

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 1753 |
| | ) | |
| DARIONE ROSS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     On February 28, 2017, the defendant-appellant, Darione Ross, filed a *pro se* motion to file a successive postconviction petition in the circuit court of Cook County alleging that his 50-year sentence is unconstitutional. The circuit court denied the defendant leave to file his successive postconviction petition, and the defendant now appeals. For the reasons that follow, we reverse the judgment of the circuit court of Cook County and remand the case for further postconviction proceedings.

¶ 2                                    BACKGROUND

¶ 3     In 2012, the defendant was convicted of first degree murder and attempted armed robbery for the 2008 shooting death of Milagro Rials. The defendant was 19 years old at the time of the offense and was the sole offender. On September 11, 2012, the defendant was sentenced to 50 years' imprisonment (45 years for first degree murder and five years for attempted armed robbery, to be served consecutively). For a full recitation of facts leading up to the defendant's conviction

and sentence, see *People v. Ross*, 2015 IL App (1st) 123136-U.

¶ 4 On appeal, this court affirmed the defendant's conviction and sentence. *Id.* On January 11, 2016, the defendant filed a postconviction petition, which was summarily dismissed by the trial court. The defendant appealed that dismissal. This court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment. *People v. Ross*, No. 1-16-1322 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 5 On February 28, 2017, the defendant filed a *pro se* motion for leave to file a successive postconviction petition, which is the subject of the instant appeal. In his petition attached to the motion, the defendant argued, for the first time, that his 50-year sentence is an unconstitutional *de facto* life sentence as applied to him. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. Reyes*, 2016 IL 119271, the defendant stated that trial courts must consider mitigating factors associated with youth before sentencing a juvenile defendant to a *de facto* life sentence. The defendant conceded that he was not a juvenile defendant but nonetheless argued that, in light of recent case law concerning young adult offenders, *Miller* applies to him. He stated:

> "The Illinois Supreme Court has recognized that research on juvenile maturity brain development might also apply to young adults. The 19[-]year[-]old defendant in *People v. Thompson*[, 2015 IL 118151,] argued, for the first time on appeal[,] that *Miller* should apply with equal force to him. *** [The] record failed to contain any information regarding how the evolving science on juvenile maturity and brain development [applied specifically to the defendant in that case]. Though the Illinois Supreme Court did not extend *Miller* to young adults in *Thompson*, it did open the door for the argument."

¶ 6      The defendant's petition further cited *People v. Harris*, 2016 IL App (1st) 141744, *rev'd*, 2018 IL 121932, in which this court held that the 18-year-old defendant's sentence of 76 years violated the proportionate penalties clause of the Illinois Constitution, and *People v. House*, 2015 IL App (1st) 110580, *vacated*, No. 122134 (Ill. Nov. 28, 2018), in which this court held that a mandatory life sentence violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution as applied to the defendant, who was 19 years old at the time of his offense.

¶ 7      The defendant argued that the reasoning in *Harris* and *House* applies to him because he was 19 years old at the time of his offense, he did not have a history of violent crimes, he grew up with an alcoholic and drug-addicted father, and he became a drug addict himself (although he overcame his addiction and earned his general equivalency diploma while imprisoned). The defendant's petition asserted: "The evidence shows that [the defendant] [can] rehabilitate himself if given the opportunity[,] or in the words of our constitution[,] [']might be able to restore himself to useful citizenship.['] " He accordingly claimed that his sentence was unconstitutional as applied to him.

¶ 8      The trial court denied the defendant leave to file his successive postconviction petition. In so ruling, the trial court noted that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) normally limits petitioners to only one postconviction petition but that courts may grant leave to file a successive postconviction petition if the petitioner shows cause for his failure to bring the claim in his initial postconviction petition and that he was prejudiced from that failure. The trial court found that the defendant failed to show cause to file his successive petition because *Miller* and *House* were both decided prior to the defendant's initial postconviction petition

and so he could have raised his claim based on those cases in his initial petition. Further, the trial court held that *Miller* and *House* were both inapplicable to the defendant because *Miller* only applies to juvenile defendants and *House* involved a mandatory life sentence, which was distinguishable from the defendant's case, and so the defendant failed to show prejudice. The trial court stated:

> "Even if [the defendant's] sentence qualified for *Miller-type* protections, *House* did not expand *Miller*'s holding to include all non-juvenile young adults. *House* explicitly limited its holding and only found a violation of the proportionate penalties clause as applied to the defendant because the defendant was a teenager, did not have a criminal history, had a troubled family background, and, most importantly, only served as a lookout rather than being directly responsible for [the] offense. *** Here, [the defendant] was directly responsible for the murder."

¶ 9 The trial court acknowledged that *Harris* was decided after the defendant had filed his initial postconviction petition, but noted that the defendant "was older and received a significantly shorter sentence than the defendant in *Harris*," and accordingly the court concluded it was inapplicable to the defendant's case. The trial court therefore denied the defendant's motion for leave to file his successive postconviction petition. This appeal followed.

¶ 10                                                  ANALYSIS

¶ 11 We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. Rs. 606, 651(a) (eff. July 1, 2017).

¶ 12 The defendant presents the following issue: whether the trial court erred in denying him leave to file his successive postconviction petition.

¶ 13    The Act provides a method by which convicted persons under a criminal sentence can assert that their constitutional rights were violated. 725 ILCS 5/122-1 (West 2016); *People v. Allen*, 2019 IL App (1st) 162985, ¶ 29. The Act generally contemplates the filing of only one postconviction petition, and any claim not presented in the initial petition is subsequently forfeited. 725 ILCS 5/122-1(f) (West 2016); *Allen*, 2019 IL App (1st) 162985, ¶ 29. However, a court may grant a defendant leave to file a successive postconviction petition if he demonstrates cause for failing to raise the claim in his earlier petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2016); *Allen*, 2019 IL App (1st) 162985, ¶ 32. Under this cause-and-prejudice test, a defendant must establish *both* cause and prejudice. *Allen*, 2019 IL App (1st) 162985, ¶ 32. " 'Cause' is established when the defendant shows that 'some objective factor external to the defense impeded his ability to raise the claim' in his original postconviction proceeding." *Id.* (quoting *People v. Tenner*, 206 Ill. 2d 381, 393 (2002)). And " '[p]rejudice' is established when the defendant shows that the 'claimed constitutional error so infected his trial that the resulting conviction violated due process.' " *Id.* (quoting *Tenner*, 206 Ill. 2d at 393). If the defendant makes a *prima facie* showing of cause and prejudice, the court should grant the defendant leave to file his successive postconviction petition. *People v. Ames*, 2019 IL App (4th) 170569, ¶ 13. This court reviews the denial of a defendant's motion for leave to file a successive postconviction petition *de novo*. *Id.* ¶ 11.

¶ 14    The basis for the defendant's successive postconviction petition is that his 50-year sentence is unconstitutional pursuant to recent case law governing the sentencing of juvenile and young adult offenders. This is an evolving area of law. Indeed, even after the parties submitted their briefs in this appeal, both the Illinois Supreme Court and the Illinois Appellate Court issued

several different rulings that are relevant to the instant issue, and so we allowed the parties to subsequently cite and discuss those cases. We begin our analysis by reviewing the recent trend in sentencing juveniles and young adults.

¶ 15    "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller*, 567 U.S. at 469 (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). The United States Supreme Court in *Miller* held that mandatory life sentences without the possibility of parole, imposed upon juvenile defendants, are unconstitutional under the eighth amendment because such sentences prevent the trial court from considering the mitigating qualities of youth, such as the defendant's age, background, and mental and emotional development. *Id.* at 476, 489.

¶ 16    The Illinois Supreme Court has interpreted *Miller* in a manner applicable to juvenile defendants convicted and sentenced under Illinois law. Under that interpretation, our supreme court has determined that a life sentence, whether natural or *de facto*, whether mandatory or discretionary, is unconstitutional for juveniles where the trial court did not consider the mitigating qualities of youth described in *Miller*. *Reyes*, 2016 IL 119271, ¶ 9 ("sentencing a juvenile offender to a mandatory term of years that is the functional equivalent of life without the possibility of parole constitutes cruel and unusual punishment in violation of the eighth amendment"); *People v. Holman*, 2017 IL 120655, ¶ 40 (life sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers the defendant's youth and its attendant characteristics).

¶ 17    After our supreme court's rulings in *Reyes* and *Holman*, the Illinois Appellate Court, in various districts throughout the state, received an increasing number of appeals from defendants

convicted of crimes committed when they were juveniles who were now seeking relief from their sentences pursuant to *Reyes* and *Holman.* The lack of consensus regarding a precise number of years that must be imposed in order to constitute a *de facto* life sentence led to inconsistency on this issue in the rulings of the Illinois Appellate Court. Our supreme court recently addressed the issue of *de facto* life sentences for juveniles in *People v. Buffer*, 2019 IL 122327. In *Buffer*, the supreme court drew the line at 40 years for a prison term to be considered a *de facto* life sentence. *Id.* ¶ 40. Specifically, the court held that "a prison sentence of 40 years or less imposed on a juvenile offender provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (Internal quotation marks omitted.) *Id.* ¶ 41.

¶ 18     Although all of those cases pertain to juvenile defendants, our supreme court has recently opened the door for young adult offenders to demonstrate that their own specific characteristics at the time of their offense were so like those of a juvenile that imposition of a life sentence, absent the safeguards established in *Miller*, violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25; see *People v. Thompson*, 2015 IL 118151, ¶ 44 (the 19-year-old defendant could not challenge his sentence as unconstitutional as applied to him pursuant to *Miller* for the first time on direct appeal but was "not necessarily foreclosed" from asserting the claim in postconviction proceedings). In *People v. Harris*, 2018 IL 121932, the Illinois Supreme Court reversed this court's holding that the 18-year-old defendant's sentence of 76 years violated the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 40. The court explained, however, that the defendant did not raise his as-applied constitutional challenge in the trial court, which meant that the trial court did not hold an evidentiary hearing on the constitutional claim and therefore did not make any findings of fact

on the defendant's specific circumstances. *Id.* Our supreme court reasoned that, in turn, this court "held [the] defendant's sentence violated the Illinois Constitution without a developed evidentiary record on the as-applied *** challenge." *Id.* In so ruling, the supreme court set in motion a method for young adult offenders to demonstrate, through an adequate factual record, that the tenets of *Miller* apply to them. *Daniels*, 2020 IL App (1st) 171738, ¶ 25.

¶ 19    Following *Harris*, the supreme court instructed this court to reconsider our ruling in *House*, which held that a mandatory life sentence violated the proportionate penalties clause of the Illinois Constitution as applied to the defendant, who was 19 years old at the time of his offense. *People v. House*, 2019 IL App (1st) 110580-B, ¶ 1, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020) (hereinafter referred to as *House II*). In *House II*, which is currently pending before the Illinois Supreme Court, this court again held the defendant's mandatory life sentence shocked the moral sense of the community and therefore violated the proportionate penalties clause, "[g]iven [the] defendant's age, his family background, his actions as a lookout as opposed to being the actual shooter, and lack of any prior violent convictions." *Id.* ¶ 64.

¶ 20    Importantly, Illinois courts consider the sentencing claims of young adult offenders under the proportionate penalties clause of the Illinois Constitution rather than the eighth amendment of the United States Constitution. *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 51. "This is because federal cases have generally drawn a line at 18 years of age [citation] and because *** the proportionate penalties clause offers a broader path to the same types of relief." *Id.* Although our supreme court has not yet outlined the parameters of an as-applied, youth-based sentencing challenge by a young adult offender pursuant to the proportionate penalties clause and the area of law is still in its infancy, the law undoubtedly has continued to trend in the direction of increased

protections for young adult offenders. *Daniels*, 2020 IL App (1st) 171738, ¶ 34.

¶ 21 In the instant case, the State makes much of the fact that *Miller* and *House*, which the defendant relied upon in his successive petition, were decided *before* the defendant filed his initial postconviction petition. The State avers that, in turn, the defendant cannot establish cause to file his successive petition because he could have raised this issue in his initial petition. However, neither *Miller* nor *House* provided relief for the defendant's specific claim. *Miller* only applies to juvenile defendants, which the defendant is not, and *House* involved a mandatory life sentence, which the defendant did not receive. Even if the defendant had alleged in his initial petition that his sentence is unconstitutional pursuant to *Miller* and *House*, it would have been rejected. It was not until *Reyes* was filed by our supreme court, which established that *Miller* also applies to *de facto* life sentences, that the defendant's claim became mature enough so that it could be raised in that context. See *People v. Bland*, 2020 IL App (3d) 170705, ¶ 10 (*Miller* was not extended to *de facto* life sentences until *Reyes*). And since *Reyes* was not filed until September 2016, *after* the defendant had filed his initial postconviction petition in January 2016, he could not have raised this claim in his initial petition. Further, *Buffer* established *just last year* that a sentence over 40 years, such as the defendant's 50-year sentence, is a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 40. Prior to *Buffer*'s ruling in 2019, whether the defendant's 50-year sentence constituted a *de facto* life sentence was left to interpretation. The defendant accordingly has established the cause prong of the cause-and-prejudice test necessary for filing his successive petition. See 725 ILCS 5/122-1(f) (West 2016) (a defendant "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings").

¶ 22    Turning to the prejudice prong, several very recent cases from this court with analogous facts guide our analysis. In *Franklin*, 2020 IL App (1st) 171628, the defendant, who was 18 years old at the time he committed murder, sought leave to file his successive postconviction petition on the basis that his life sentence was unconstitutional as applied to him, but the trial court denied him leave. *Id.* ¶¶ 1-2. On appeal, this court reversed the trial court's denial and remanded the case to the trial court for further postconviction proceedings. *Id.* ¶ 73. In our ruling, we noted the recent trend in treating offenders under 21 years old differently than adults, such as our legislature changing the law to make a person convicted of first degree murder eligible for parole after serving only 20 years, if he was under 21 years old at the time of the offense and was sentenced after the law took effect. *Id.* ¶ 63 (citing Pub. Act 100-1182 (eff. June 1, 2019)).

¶ 23    *Franklin* further noted that, when a defendant claims that the evolving science discussed in *Miller* and its progeny applies to young adults, "the trial court is the most appropriate tribunal for factual development, and it is paramount that the record be developed for this purpose." *Id.* ¶ 71. We explained:

> "The law is in the developmental stage as to the sentencing of young offenders, and it is important for a trial court to create an appropriate record during both postconviction proceedings and sentencings so that a reviewing court can understand the factors the court used in making its decision or rendering a sentence." *Id.* ¶ 68.

In that case, the record contained no evidence about the evolving science of young adult brains and its impact on the defendant's case, and so we found that the defendant had shown prejudice by establishing a " 'catch-22'—without a developed record, he cannot show his constitutional

claim has merit, and without a [meritorious] claim, he cannot proceed to develop a record." *Id.* ¶ 72. We accordingly remanded the case to the trial court for further postconviction proceedings in order to develop the record. *Id.* ¶ 73.

¶ 24     In another analogous case, *Daniels*, 2020 IL App (1st) 171738, this court reversed the trial court's judgment denying the defendant leave to file a successive postconviction petition, which alleged that his life sentence is unconstitutional, and remanded the case to the trial court for further postconviction proceedings. *Id.* ¶ 36. The defendant was 18 years old at the time he committed murder, and our analysis discussed the evolving landscape around sentencing young adult offenders. *Id.* ¶¶ 24-30. We stated: "As the State itself acknowledges, 'there has been virtually no guidance as to what, exactly, an adult defendant must show to obtain relief under *Miller*'s auspices.' " *Id.* ¶ 31. Because the defendant in that case had not yet had the opportunity to ask a court to consider if he thought and behaved like a juvenile at the time of his offense such that a life sentence, as applied to him, was unconstitutional, he established that he was prejudiced. *Id.* ¶ 34.

¶ 25     The instant case is analogous to *Franklin* and *Daniels*, as well as other recent cases continuing in the same trend. See *People v. Savage*, 2020 IL App (1st) 173135, ¶ 67 (remanded for further postconviction proceedings because "[a]lthough [the] defendant was seven months past his 21st birthday at the time of his offense," his argument that mental health issues may lower a defendant's functional age finds support in recent case law); *Bland*, 2020 IL App (3d) 170705 (held that the defendant, who was 19 years old at the time of his offense, pled enough facts to warrant further proceedings on his claim that *Miller* applies to him where he been diagnosed with an antisocial personality disorder and exhibited symptoms similar to characteristics of juveniles).

¶ 26     Like *Franklin*, *Daniels*, *Savage*, and *Bland*, it is premature in this case to deny the

defendant leave to file his successive postconviction petition. His petition alleged facts to support his argument that his brain was more akin to a juvenile's brain when he committed murder, *i.e.*, that he was 19 years old at the time of the murder and evolving science shows his brain was still developing, that he grew up with a father who was a drug addict and an alcoholic, and that the defendant himself struggled with drug addiction. See *Savage*, 2020 IL App (1st) 173135, ¶ 78 (a defendant should make allegations that there were issues particular to him at the time of his offense, such as drug addiction, that rendered him functionally younger than his chronological age). The defendant's petition further cited the evolving science on young adult brains noted in *Thompson*. Those pleadings warrant further proceedings to determine if *Miller* applies to the defendant. See *People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 54-55 (at the pleading stage the defendant is not required to prove anything; he needs only to plead facts justifying further proceedings).

¶ 27    The State avers that the trial court did, in fact, consider the defendant's youth when it sentenced the defendant to 50 years' imprisonment. Yet the record does not show that the trial court considered the specific mitigating factors related to the defendant's youth and developing brain at the time of his offense, such as his drug addiction. Significantly, the defendant was sentenced in 2012, the *same year* that the United States Supreme Court filed *Miller*, which began the legal evolution concerning sentencing juvenile and young adult offenders. Consequently, *Miller*'s tenets were not even a prevailing consideration for the trial court at the time of sentencing. In any case, that analysis puts the cart before the horse, as the first step is to determine *if Miller* and its progeny apply to the defendant as a young adult offender. Young adult defendants are not entitled to a presumption that *Miller* applies to them, so when a young adult raises claims that the

*Miller* line of cases applies to him, he must first plead, and ultimately prove, that *his* individual characteristics require the application of *Miller*. *Id.* ¶ 52. Then if, *and only if*, the young adult makes this showing, the trial court then goes on to consider whether the original sentencing hearing complied with *Miller*. *Id.* Further proceedings on the defendant's petition in this case will allow the trial court to determine whether the defendant's individual characteristics at the time of the offense rendered him functionally younger than 19 years old, such that the tenets of *Miller* apply to him. If so, *then* the trial court can determine whether the defendant's sentence complied with *Miller*.

¶ 28    The State contends that *Miller* and its progeny are inapplicable to the defendant because he was the sole perpetrator in the crime and was not convicted under a theory of accountability, such as the defendant in *House II*. It is true that a few recent published cases have adopted this argument. See *People v. Ramsey*, 2019 IL App (3d) 160759, ¶ 23 (the 18-year-old defendant "was a solo actor who sexually assaulted and killed one minor and then broke into a residence and shot four other minors, killing one. These are not circumstances that warrant the type of leniency *House [II]* received."); *People v. Handy*, 2019 IL App (1st) 170213, ¶ 40 ("[a] key factor in *House [II]* was that the defendant 'merely acted as a lookout' and was not present at the scene of the murder"; "[h]ere, we cannot overlook defendant's active participation"). Nevertheless, it has yet to be established, in the evolving case law surrounding juveniles and young adult offenders, that a defendant's *degree of participation* in the offense disqualifies him from raising a claim pursuant to *Miller*. We find that the defendant should not be precluded from claiming his sentence is unconstitutional merely because he was not convicted under the theory of accountability. See *Daniels*, 2020 IL App (1st) 171738, ¶¶ 30-31 ("we are unconvinced and believe it is premature at

this juncture to conclude that the *only* way a defendant can establish cause and prejudice for the filing of a successive petition asserting an as-applied, youth-based sentencing claim is by demonstrating that the facts of his or her case align with those in *House [II]*" (emphasis in original)).

¶ 29 Although the defendant's claim that his 50-year sentence violates the proportionate penalties clause of the Illinois Constitution may ultimately fail, there is no way to make that determination at this stage without further postconviction proceedings. In other words, the defendant has pled enough facts to warrant further proceedings on his claim that the tenets of *Miller* apply to him. He is therefore entitled to develop the record on the matter. Accordingly, the defendant established the prejudice prong of the cause-and-prejudice test for filing his successive petition.

¶ 30 Having found that the defendant established both cause and prejudice, we hold that he should have been granted leave to file his successive postconviction petition on his claim pursuant to the proportionate penalties clause of the Illinois Constitution. We emphasize, however, that the defendant's claim pursuant to the eighth amendment of the United States Constitution does not have merit, as case law has drawn the line at 18 years old for a defendant to seek relief under the eighth amendment in the manner that the defendant is attempting to do here. We accordingly reverse the judgment of the trial court and remand the case to that court for further postconviction proceedings regarding *only* the defendant's proportionate penalties clause claim.

¶ 31                                         CONCLUSION

¶ 32 For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the case to that court for further proceedings consistent with this opinion.

¶ 33    Reversed and remanded.

---

**No. 1-17-1202**

---

| | |
|---|---|
| **Cite as:** | *People v. Ross*, 2020 IL App (1st) 171202 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 09-CR-1753; the Hon. Stanley J. Sacks, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Emily E. Filpi, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Koula A. Fournier, Assistant State's Attorneys, of counsel), for the People. |

---