2021 IL App (1st) 191625-U

No. 1-19-1625

Second Division
December 28, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 97 CR 12486 |
| ROMMELL WINTERS, | ) ) | Honorable Thomas Joseph Hennelly |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's denial of defendant's motion for leave to file his successive postconviction petition is affirmed where defendant failed to established both cause and prejudice with respect to his claim that his natural life sentence, imposed for crimes committed when he was 18 years old, was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution.

¶ 2    Defendant-appellant, Rommell Winters, appeals from the circuit court's denial of his *pro se* petition for leave to file a successive postconviction petition pursuant to the Post-Conviction

Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, defendant, who was 18 years old at the time of the underlying offenses and was convicted on a theory of accountability, contends that he sufficiently established cause and prejudice as to his as-applied constitutional challenge to his natural life sentence under the proportionate penalties clause. For the following reasons, we affirm the circuit court's dismissal.

¶ 3                              I. BACKGROUND

¶ 4      This case was previously before us twice. See *People v. Winters*, No. 1-99-4427; *People v. Winters*, 349 Ill. App. 3d 747 (2004). We repeat only the facts necessary to resolve this instant appeal.

¶ 5      On November 7, 1996, Carl Barbee and Jerome Coleman were killed in a shooting. Defendant and his codefendant, Kevin Malone, were charged with their murders. Defendant and Malone were tried simultaneously with separate juries.

¶ 6      At trial, Chicago police officer Michael Dalessandro testified that he investigated a related shooting that previously occurred on October 16, 1996, on the 3000 block of West Chicago Avenue. The victims of that shooting were Malone, Deon Wilkins, and Anthony Prince. That shooting was unsolved, and the investigation was suspended in November of 1996.

¶ 7      Other testimony revealed that Malone, defendant, Prince, Dwayne Mobley, and Dushae Nesbitt were all members of the Traveling Vice Lords gang, who were in a feud with the Unknown Vice Lords gang. At the time, the only individual who had a rank within the gang was Prince, who was "chief."

¶ 8      Nesbitt and Mobley testified to the following. On November 7, 1996, Mobley was driving his girlfriend's maroon Chevrolet Beretta, with his girlfriend and Nesbitt as passengers. Both Nesbitt and Mobley were aware of the October shooting. They came across defendant and

Malone in a black Buick Regal, which defendant was driving. Defendant told Mobley and Nesbitt to follow them (though Mobley told police and testified before a grand jury that Malone was the one who told them to follow them). Both cars then drove to the intersection of Adams Street and Spaulding Avenue near Marshall High School, which was the Unknown Vice Lords' territory. There, Nesbitt and Mobley observed a black Chevrolet with two men inside, who were later identified as Barbee and Coleman. The black Chevrolet attempted a U-turn, but defendant blocked the car. Malone stepped out of the Regal with a gun in his hand. He fired seven or eight shots at the Chevrolet, shattering the driver's side window. Nesbitt and Mobley drove away from the scene, circled the block, and arrived back at the intersection to find only the Chevrolet. Three days later, Mobley spoke with Malone, who told him not to say anything about the shooting. Nesbitt encountered Malone at a barber shop sometime after the shooting and was likewise instructed not to say anything about the shooting. In April 1997, on separate occasions, Mobley and Nesbitt went to a police station, viewed physical lineups, and identified Malone and defendant as involved in the shooting.

¶ 9     The State presented testimony from former Assistant State's Attorney Kevin Simon. This evidence was submitted solely to Malone's jury but was considered by the trial court at defendant's resentencing hearing; thus, we relay the general substance of it here. Simon testified that Malone signed a handwritten statement confessing to the shooting following his arrest. Therein, Malone stated that on November 7, 1996, Prince ordered him to accompany defendant to kill Barbee after Barbee failed to pay Prince $20,000 in exchange for Prince not seeking revenge for the October shooting. Malone handed defendant a gun and rode in the front passenger seat as defendant drove to Adams and Spaulding. Defendant handed the gun back to Malone and told him to ask the men in the black Chevrolet about the money. When Malone

questioned the occupants of the vehicle, he saw one man reach under the glove compartment and Malone subsequently fired 10 or 11 times into the car. After he and defendant drove away from the scene, he disposed of the gun.

¶ 10    The jury convicted defendant of the first degree murders of Barbee and Coleman.

¶ 11    At sentencing, the presentence investigation report (PSI) was filed with the court. In aggravation, the State submitted the victim impact statement of Barbee's mother, Carolyn Barbee. The court sentenced defendant to natural life in prison without parole for each count of first degree murder. The court denied defendant's motion to reconsider his sentence.

¶ 12    On direct appeal, this court affirmed defendant's convictions but vacated his sentence and remanded for resentencing because Public Act 89-203 (eff. July 21, 1995), under which defendant was sentenced, had been declared unconstitutional by our supreme court in *People v. Wooters*, 188 Ill. 2d 500, 520 (1999). Thus, this court instructed the trial court to resentence defendant under the provisions of the Unified Code of Corrections (Code) as they existed prior to Public Act 89-203. *Winters*, 349 Ill. App. 3d at 748.

¶ 13    At the resentencing hearing, an updated PSI was submitted, along with the previously submitted victim impact statement. Defendant's PSI showed that he did not have a criminal record (except for two juvenile adjudications for drug possession). Defendant spoke in allocution, maintaining his innocence but also stating that he has stayed out of trouble while incarcerated, that he was previously "a fragile thinker who was living a life of falsehood," and that he was no longer associated with any gang. The trial court sentenced defendant to a term of natural life for each of the murders. In so ruling, the court stated that it had considered the statutory factors in mitigation and aggravation and defendant's rehabilitative potential and was

familiar with the PSI. Defendant filed a motion to reconsider his sentence, which the trial court denied but clarified that the sentences were to run concurrently.

¶ 14    Defendant appealed to this court, arguing that although mandatory life sentence for the murder of more than one person was required, implicit in this court's remand for resentencing was that the sentence was discretionary. *Winters*, 349 Ill. App. 3d at 748. Alternatively, defendant argued that "a mandatory life sentence for a 'young' adult defendant convicted under a theory of liability is unconstitutional under the Illinois Supreme Court's decision in *People v. Miller (Leon Miller)*, 202 Ill. 2d 328 (2002)." *Winters,* 349 Ill. App. 3d at 748. This court affirmed, holding that a natural life sentence was mandatory for the murder of more than one person. *Winters*, 349 Ill. App. 3d at 750. We also found that, not only was the level of defendant's participation in the offense factually different from that of the defendant in *Leon Miller,* but unlike the defendant in *Leon Miller,* defendant was not a juvenile at the time the offenses were committed. *Id.* at 750-51. Our supreme court denied defendant's petition for leave to appeal. *Winters*, 211 Ill. 2d 613 (2004).

¶ 15    While his direct appeal from resentencing was pending with this court, defendant filed his initial postconviction petition, in which he argued that (1) his conviction and sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and (2) his appellate counsel on direct appeal was ineffective for failing to argue that his sentence was an abuse of the trial court's discretion. The trial court summarily dismissed the petition, and no appeal was taken from the dismissal.

¶ 16    On October 31, 2018, defendant filed a motion for leave to file a successive postconviction petition that is the subject of this appeal. Therein, defendant claimed that his mandatory life sentence violated both the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. He contended that his sentence

was invalid as applied to him because the sentencing court did not take into account his youthfulness and minimal involvement in the offenses. Specifically, defendant referenced the evolving neuroscience regarding the development of the brain. He also pointed out the unjustness that would result from his sentence not being reduced where the sentence of his codefendant Malone (who was the actual shooter and only a year younger) had been reduced to 45 years' imprisonment under *Miller v. Alabama*, 567 U.S. 460 (2012).[1]

¶ 17    Attached to defendant's petition was his own affidavit, in which he averred that he was raised "in a gang and drug infested environment," he lost his father to gun violence when he was a teenager, and he had no rank within the gang at the time of the shooting.

¶ 18    On June 14, 2019, the trial court denied defendant's motion for leave to file a successive postconviction petition, stating that defendant could not raise a claim under *Miller* because he was not a juvenile at the time of the offense.

¶ 19    This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21    On appeal, defendant argues that the trial court erred in denying him leave to file his successive postconviction petition, which contained a claim that his sentence of mandatory life imprisonment violated the proportionate penalties clause of the Illinois Constitution as applied to him, where he was 18 years old at the time of the murder and was found guilty on the basis of accountability. He asserts that his petition demonstrates sufficient cause and prejudice under the Act such that further proceedings are warranted.

¶ 22                         A. Standard of Review

---

[1] Attached to defendant's successive petition was the sentencing memorandum from Malone's resentencing upon remand from this court (case No. 97 CR 1248602).

¶ 23    The Act provides a method for a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/1221 (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates the filing of only one petition without leave of court. *People v. Lusby*, 2020 IL 124046, ¶ 27. To obtain leave to file a successive petition, the petitioner must demonstrate both cause for his failure to raise the claim in the initial petition and prejudice from that failure. *Id.* To show cause, the petitioner must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. *Id.*; see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). To show prejudice, the petitioner must demonstrate that the claim not raised during his initial postconviction proceedings so infected the resulting conviction or sentence that it violated due process. *Lusby*, 2020 IL 124046, ¶ 27. It is the petitioner's burden to establish a *prima facie* showing of cause and prejudice before any further proceedings on his claims can occur. *People v. Bailey*, 2017 IL 121450, ¶ 24; *People v. Smith*, 2014 IL 115946, ¶ 30.

¶ 24    The cause-and-prejudice test is a more difficult standard to satisfy than that required at the first stage for an initial postconviction petition. *Smith*, 2014 IL 115946, ¶ 35. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* Successive postconviction petitions call into doubt that finality of criminal proceedings, and as such, the hurdles for such petitions "are lowered only in very limited circumstances." *People v. Tenner*, 381, 392 (2002). Both prongs must be satisfied for leave of court to be granted. *People v. Guerrero*, 2012 IL 112020, ¶ 15. Whether the denial of defendant's motion for leave to file a successive

postconviction petition was proper is an issue that we review *de novo. People v. Edgeston*, 396 Ill. App. 3d 514, 518 (2009).

¶ 25                              B. *Miller* and its Progeny

¶ 26    As an initial matter, we note that defendant made a claim pursuant to the eighth amendment in his petition; however, on appeal, he does not raise any arguments based on the eighth amendment. Thus, we need not address that claim, and as is made clear below, we would reject such a claim as defendant was not a juvenile at the time of the offenses. See *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 49 ("It is well established that offenders who are 18 years and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases."). Nevertheless, because defendant's proportionate penalties clause claim is rooted in the continuously evolving caselaw flowing from *Miller*, the substance of which addressed eighth amendment protections, we find it essential to summarize that jurisprudence, as it currently stands.

¶ 27    During the past two decades, the United States Supreme Court has issued several decisions providing heightened protections for juvenile defendants in sentencing under the eighth amendment of the United States Constitution, which prohibits cruel and unusual punishment. See *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005) (eighth amendment prohibits the death penalty for juveniles who commit murder); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (eighth amendment prohibits mandatory life without parole sentences for juveniles who commit nonhomicide offense); *Miller*, 567 U.S. at 479 (eighth amendment prohibits mandatory life without parole sentences for juvenile offenders convicted of homicide). Specifically, the rationale for the holding in *Miller* was that "children are constitutionally different from adults for

purposes of sentencing," as they are less mature and responsible than adults, and more impulsive and vulnerable to peer pressure. 567 U.S. at 471-74.

¶ 28    In the wake of *Miller*, our supreme court has broadened protections for juvenile offenders in several ways. First, the court has applied *Miller* to juvenile offenders who receive *de facto* life sentences (*People v. Reyes*, 2016 IL 119271, ¶ 9), which the court has explicitly defined as a prison term of more than 40 years (*People v. Buffer*, 2019 IL 122327, ¶ 40). Protections under *Miller* were also extended in *People v. Holman*, 2017 IL 120655, ¶ 40, wherein our supreme court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." The court further held that a juvenile may only be sentenced to life imprisonment without parole if the trial court first determines that the juvenile defendant's conduct demonstrated "irretrievable depravity, permanent incorrigibility, or irreparable corruption." *Id.* ¶ 46.[2] The court continued that such a determination should be made after the trial court has considered the factors set forth in *Miller*, which include, but are not limited to: (1) age at the time of the offense and any evidence of his "particular immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) family and home environment; (3) degree of participation in the homicide and evidence of pressures that may have affected him; (4) any incompetence, including an inability to deal with police officers or prosecutors and incapacity to

---

[2] Recently, the United States Supreme Court issued its decision in *Jones v. Mississippi*, 141 S. Ct. 1307, 1318-19 (2021), holding that sentencing courts are not constitutionally mandated under the eighth amendment to make a finding of "permanent incorrigibility" before sentencing a juvenile defendant to life without parole. Nonetheless, the Court also expressly stated that states are not precluded from imposing any sentencing mechanisms they see fit in cases involving juvenile defendants convicted of murder, such as requiring extra factual findings, prohibiting sentences of life without parole for juveniles, or permitting appellate review based in proportionality for life-without-parole sentences. *Id.* at 1323. More recently, in *Dorsey*, 2021 IL 123010, ¶ 42, our supreme court suggested, without more, that, in light of *Jones*, the holding of *Holman* is "questionable[.]" Absent more, *Holman* continues as binding precedent which we are constrained to follow.

assist his own counsel; and (5) prospects for rehabilitation. *Id.* (citing *Miller*, 567 U.S. at 477-78).

¶ 29 Against this backdrop, we set forth the prevailing caselaw regarding proportionate penalties clause claims for young adult offenders.

¶ 30 C. Proportionate Penalties Clause

¶ 31 The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This clause provides greater protections against excessive punishment than the eighth amendment of our federal constitution. *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 35; *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 63; see also *People v. Clemons*, 2012 IL 107821, ¶ 40 (the proportionate penalties clause "which focuses on the objective of rehabilitation, went beyond the framers' understanding of the eighth amendment and is not synonymous with that provision."), but see *People v. Patterson*, 2014 IL 115102, ¶ 106 (stating that the proportionate penalties clause is "co-extensive with the eighth amendment's cruel and unusual punishment clause."). A defendant's sentence violates the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Leon Miller*, 202 Ill. 2d at 38. The proportionate penalties clause requires balancing the goals of retribution and rehabilitation, which necessitates a careful consideration of all the factors in aggravation and mitigation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and the community's changing standards of moral decency. *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 32    At the time this appeal was filed, our supreme court, in two cases on direct appeal, recognized that young adults (those between 18 and 21 years old) may rely on the evolving neuroscience regarding brain development in juveniles and its correlation to maturity underpinning the *Miller* decision in support of an as-applied challenge pursuant to the proportionate penalties clause of the Illinois Constitution. See *People v. Harris*, 2018 IL 121932, ¶ 48; *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44. In *Thompson* and *Harris*, the court indicated that young defendants could demonstrate that their own specific characteristics and circumstances were so like those of a juvenile that imposition of a life sentence, absent the necessary safeguards established in *Miller*, would violate the proportionate penalties clause. The court instructed, however, that such claims would best be pursued in the trial court or through postconviction proceedings. *Harris*, 2018 IL 121932, ¶ 48 (holding that the as-applied, youth-based sentencing claim of an 18-year-old defendant was "more appropriately raised" in postconviction proceedings); *Thompson*, 2015 IL 118151, ¶¶ 43-44 (noting that a 19-year-old defendant was "not necessarily foreclosed" from asserting such a claim in postconviction proceedings).

¶ 33    Relying on this decisional law, defendant seeks review of his sentence in a postconviction proceeding. Thus, we turn to the merits of defendant's appeal.

¶ 34                                    D. Defendant's Petition

¶ 35    Defendant argues that he has established both cause and prejudice for his successive postconviction petition as required under the Act.

¶ 36                                    1. Cause

¶ 37    Defendant contends, and the State concedes, that he has sufficiently established cause for his failure to raise this claim in his initial postconviction petition. However, as a reviewing court

we are not bound by a party's concession. *People v. Carter*, 2015 IL 117709, ¶ 22. Thus, we commence our review, first with a recitation of the relevant sections of the Act.

¶ 38    Pursuant to section 122-1(f) of the Act, leave of court to file a successive postconviction petition may only be granted if the petitioner first "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings[.]" 725 ILCS 5/122-1(f) (West 2018). " '[A] showing that the factual or legal basis for a claim was not reasonably available to counsel *** would constitute cause under this standard.' " *Pitsonbarger*, 205 Ill. 2d at 464 (quoting *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (2009)).

¶ 39    Here, defendant argues that he has demonstrated cause for his claim as *Miller* "and other recent decisions" created new constitutional rules that were not available to him at the time he filed his initial postconviction petition. Defendant filed his initial postconviction petition in 2003, several years before *Miller* was decided in 2012. Defendant does not specifically identify the "other recent decisions" in support of his argument regarding cause. In support of his argument regarding prejudice, however, he cites to *Harris*, 2018 IL 121932, which was decided more than a decade after his initial postconviction petition was filed.

¶ 40    We believe that *People v. Davis* serves as an appropriate starting point for our analysis of the cause component of defendant's petition. 2014 IL 115595. *Davis* involved a 14-year-old defendant convicted of multiple murders, attempted murder, and home invasion and who was sentenced to natural life in prison without parole. *Id.* ¶ 5. In September 2002, the defendant filed what would have been his fourth petition for postconviction relief pursuant to the Act. *Id.* ¶ 7. Relying on our supreme court's decision in *Leon Miller*, the defendant argued that his natural life sentence was unconstitutional because he did not actually participate in the act of killing. *Id.* He

argued that his sentence violated the eighth amendment to the United States Constitution and, further, that the statute requiring a mandatory life sentence violated the Illinois Constitution as applied to a 14-year-old defendant. *Id.* Following a hearing, the circuit court dismissed the petition, finding the defendant's case to be distinguishable from *Leon Miller*, where that defendant was not an active participant in the commission of the offense. *Id.* ¶ 8. This court, as it had held with the defendant's prior appeals from postconviction petition dismissals, affirmed the circuit court. *Id.* ¶¶ 6-8.

¶ 41    In April 2011, the defendant filed a "Motion for Leave to File a Verified Successive Post-Conviction Petition." *Id.* ¶ 9. Again, the circuit court denied the defendant leave to file a successive petition for relief pursuant to the Act and, again, the defendant appealed to this court. *Id.* ¶¶ 9-10. While the defendant's appeal was pending, the United States Supreme Court decided *Miller*. *Id.* In reversing the circuit's court's dismissal, the appellate court held that *Miller* applies retroactively on postconviction review. *Id.*

¶ 42    In affirming, our supreme court held that because *Miller* declared a new substantive rule, it applies retroactively on collateral review. *Id.* ¶ 40. The court expressly stated that "[i]n terms of the requisite cause and prejudice of the [Act], *Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel [citation], and constitutes prejudice because it retroactively applies to defendant's sentencing hearing. [Citation.]" *Id.* ¶ 42.

¶ 43    Additionally noteworthy, in *Davis*, the defendant, in reliance on the United States Supreme Court's " 'reaffirmation of the special status of children' " in *Graham* and *Miller*, contended that his sentence violated both the proportionate penalties and the due process clauses of the Illinois Constitution. *Id.* ¶ 31. In response, our supreme court noted that in "*Leon Miller*, [it] expressly recognized the special status of juvenile offenders prior to *Roper*, *Graham*, and

*Miller.*" *Id.* ¶ 45. Quoting from its opinion in *Leon Miller*, the court noted that "such special status does not necessarily prohibit a sentence of natural life without parole where a juvenile offender actively participates in the planning of a crime that results in multiple murders." *Id.* ¶ 45 (quoting *Miller*, 202 Ill. 2d at 341-42).

¶ 44    We acknowledge that *Miller* provided a new substantive rule, coupled with a procedural component. The substantive rule pronounced in *Miller* proscribed a mandatory sentence of life without parole for a juvenile offender. 567 U.S. at 465. As to its procedural component, *Miller* further requires that a sentencer consider a juvenile's youth and its attendant characteristics prior to imposing a sentence of life imprisonment without parole. *Id.* at 469-70. However, these rules, at least as they are set out in *Miller*, are strictly applicable to juvenile defendants challenging a life sentence under the eighth amendment. Defendant here is not a juvenile and is not challenging his sentence under the eighth amendment on appeal. Thus, neither the substantive rule nor the procedural component from *Miller* directly applies to defendant and his proportionate penalties clause claim. Further, defendant received a mandatory natural life sentence. Accordingly, the subsequently decided cases of *Holman*, *Reyes*, and *Buffer* (expanding *Miller* to discretionary sentences and *de facto* life sentences) were also not necessary to the formulation of defendant's claim. See *People v. Ross*, 2020 IL App (1st) 171202, ¶ 21 (finding that the defendant established cause because the supreme court cases of *Buffer* and *Reyes* decided that *Miller* applied to *de facto* life sentences). In sum, *Miller* and its direct progeny (those involving juveniles and the eighth amendment) do not provide a legal basis, or cause, for defendant's failure to include the claim in his initial postconviction petition.

¶ 45    Our finding is bolstered, and indeed, as we discuss later, is dictated by a recent decision by our supreme court. After briefing was completed in this appeal, the court issued an opinion in

*People v. Dorsey*, 2021 IL 123010, which briefly addressed this issue now before us.[3] In *Dorsey*, the juvenile defendant claimed, *inter alia*, that his sentence violated the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 68. The court rejected the defendant's claim for multiple reasons. The court first determined that the claim was forfeited and barred by *res judicata. Id.* ¶ 70. Although the *res judicata* finding was determinative, the court went further, finding that the defendant could not establish cause for his failure to raise the claim in his initial postconviction petition. *Id.* ¶ 74.

¶ 46 Citing *People v. LaPointe* 2018 IL App (2d) 160903, the court stated that "*Miller*'s unavailability prior to 2012 at best deprived [the] defendant of 'some helpful support' for his state constitutional claim, which is insufficient to establish 'cause.' " *Id.* Given the court's endorsement of *LaPointe*, we briefly summarize it here. In *LaPointe*, the defendant requested leave to file a successive postconviction petition alleging that his life sentence for murder violated both the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. 2018 IL App (2d) 160903, ¶ 1. The defendant argued that because *Miller* was issued after he was sentenced and applies retroactively to his case, he had established cause. *Id.* ¶ 56. The court rejected the defendant's proportionate penalties argument, finding that the clause was "very much in existence" when his first petition was filed and the defendant had the materials necessary "to assemble an argument that his sentence was unconstitutionally severe in light of his youth[.]" *Id.* ¶ 55. The court explained that he had established cause for his eighth amendment claim because *Miller* had created a "new legal right";

---

[3] In the main, *Dorsey* considered whether day-for-day credit should be factored into a determination of whether the defendant received a *de facto* life sentence as defined in *People v. Buffer* for purposes of an eighth amendment claim. 2021 IL 123010, ¶ 49. Finding that the defendant's sentence offered an opportunity for release prior to serving *Buffer's* 40 year *de facto* life sentence, the court held that defendant could not bring a successive postconviction petition with respect to his eighth amendment claim. *Id.* ¶ 50.

however, his proportionate penalties clause claim did not "rest on the new substantive legal rule that *Miller* created." *Id.* ¶¶ 57-58. In particular, the nonexistence of *Miller* "merely deprived [the] defendant of some helpful support" for his claim, which was insufficient to create cause. *Id.* ¶ 59. The court rejected the proposition that all caselaw written in support of a new legal rule applies retroactively and establishes cause for successive postconviction petitions, finding that doing so would result in severely weakening section 122-1(f) of the Act. *Id.*

¶ 47     Prior to *Dorsey*, there had been a clear split of authority on the question of cause with respect to proportionate penalties claims asserted by young adult defendants. See, *e.g.*, *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 46; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 31; *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 108; *People v. Ross*, 2020 IL App (1st) 171202, ¶ 21 (all of which hold that a defendant, relying on the principles of *Miller* and its progeny, establishes cause for filing a successive postconviction petition where those cases had not been decided at the time the defendant filed his initial postconviction petition); but see *People v. LaPointe*, 2018 IL App (2d) 16903; *People v. Bilski*, 2021 IL App (2d) 190779-U, ¶¶ 21-27; *People v. Hernandez*, 2021 IL App (2d) 190112-U, ¶¶ 45-46; *People v. Hoover*, 2019 IL App (2d) 170070, ¶ 37 (all of which hold that *Miller* and its progeny does not serve as cause to satisfy the cause and prejudice test).

¶ 48     Since the issuance of *Dorsey*, two decisions, *People v. Summers*, 2021 IL App (4th) 190891-U, ¶ 25, and *People v. Haines*, 2021 IL App (4th) 190612, ¶ 45, both rendered by our sister court in the Fourth District, relied on the supreme court's opinion in *Dorsey* in concluding that the young adult defendant in each case failed to establish cause for his proportionate penalties clause claim based on *Miller*. But see *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 123 (holding that defendant made a *prima facie* showing of cause for not bringing his

proportionate penalties claim in his initial petition, where *Miller* was made retroactively applicable to cases on collateral review after he had filed his initial postconviction petition).[4] The former case, *Summers*, summarily determines that the defendant there did not establish cause, citing to *LaPointe* and *Dorsey* and stating that the unavailability of *Miller* "prior to 2012 did not prevent [the defendant] from raising such a claim in a postsentencing motion, on direct appeal, or in his initial postconviction petition." 2021 IL App (4th) 190891-U, ¶ 25. *Haines*, the later decided case, contains a thorough analysis regarding the effect of *Miller* and *Harris* on the issue of cause and is summarized below.

¶ 49    In *Haines*, the court, citing *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413 (1894), stated that, in discussing minors who were between the ages of 16 and 21 years old, "[i]t was already accepted in Illinois law that there was a significant developmental difference between young adults and adults." 2021 IL App (4th) 190612, ¶ 46. The court noted that Illinois courts have long recognized and permitted as-applied claims under the proportionate penalties clause and have repeatedly held that the proportionate penalties clause requires the sentencing court to consider a defendant's youth and mentality. *Id.* ¶¶ 42-43. The court found that these principles of law constitute the basic foundation for the defendant's proportionate penalties clause claim, and the cited caselaw was all available to the defendant to formulate his claim prior to the filing of his initial postconviction proceeding. *Id.* ¶ 44. The court further stated that the brain research identified in *Miller* only serves as helpful support for the defendant's claim under the proportionate penalties clause because Illinois courts, dating back to the 19th-century, have

---

[4] Although the court in *Horshaw* comments that the supreme court in *Dorsey* called the holding of *People v. Holman*, 2017 IL 120655, into question, the *Horshaw* court makes no mention of *Dorsey's* expressed opinion regarding satisfaction of the Act's cause requirement in the context of a young adult defendant's proportionate penalty claim. 2021 IL App (1st) 182047, ¶¶ 127-28.

acknowledged that there is a significant developmental difference between minors and adults. *Id.* ¶ 46 (citing *People ex rel. Bradley*, 148 Ill. At 422-23).

¶ 50 Briefly*, Bradley* involved the interpretation and application of a new statutory scheme providing for a juvenile reformatory for those between the ages of 10 and 21 years. 148 Ill. at 418-19. The *Bradley* court also addressed an argument that the scheme was in violation of the proportionate penalties clause of the Illinois constitution because the punishment was not proportionate to the crime committed. *Id.* at 420. Specifically, the court addressed whether it was unconstitutional for both "minors" and adults to be sentenced to 20 years' imprisonment for the same crime under the same circumstances. *Id.* at 423. The court, in concluding that it was not a violation of the proportionate penalties clause, pointed out that a sentence to a reformatory is markedly different than a prison sentence. *Id.* As relevant here, the court stated: "There is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors,—the habits and the character of the latter are presumably, to a large extent, as yet unformed and unsettled." *Id.* Notably, the supreme court in *Dorsey*, in finding that defendant did not establish cause for his proportionate penalties clause claim, pointed out that the defendant there was well aware of Illinois's long-standing recognition of the special status of children, where he stated as much and cited to *Bradley* in his proportionate penalties clause argument. *Dorsey*, 2021 IL 123010, ¶¶ 68, 74.

¶ 51 Returning to our supreme court's conclusion in *Dorsey* that the defendant had failed to establish cause for his proportionate penalties clause, we note that although we are not bound to follow the decisions of our sister appellate court districts, (see *O'Casek v. Children's Home and Aid Soc. of Illinois*, 229 Ill. 2d 421, 440 (2008)), we enjoy no such discretion with respect to decisions issued by our state supreme court (see *People v. Artis*, 232 Ill.2d 156, 164 (2009)).

Arguably, because the defendant's proportionate penalties claim in *Dorsey* was determined to have been *res judicata*, the court needed not address whether the claim constituted cause under the Act, rendering its opinion thereon *dictum*.[5] "The term '*dictum*' is generally used as an abbreviation of *obiter dictum*, which means a remark or opinion uttered by the way." *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). Generally, such comments have no binding effect either as authority or precedent within the rule of *stare decisis*. *Id*. However, "an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the case, if *dictum*, is a judicial *dictum*." *Id*. A judicial *dictum* is entitled to significant weight and should be followed unless found to be erroneous. *Id*. "Even *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court." *Id*. Thus, we believe that our supreme court's opinion as expressed in *Dorsey* regarding the cause requirement for successive postconviction petitions, even if regarded as *dictum*, must be followed. Accordingly, consistent with the court's opinion in *Dorsey*, we, like the Fourth District in *Summers* and *Haines*, find that defendant has not satisfied the cause prong of the cause-and-prejudice test.[6] Having so concluded, we need not reach the prejudice component.

¶ 52                                    III. CONCLUSION

¶ 53    In sum, the rule announced in *Miller* does not provide cause for claims sought under the proportionate penalties clause, where that clause of our state constitution has been in existence

---

[5] Defendant's initial postconviction petition, in which he could have raised the proportionate penalties claim, as well as his direct appeal, in which he argued that his mandatory life sentence was unconstitutional, implicates both forfeiture and *res judicata*. In light of the opinion expressed in *Dorsey*, we need not consider, whether either doctrine operates as a bar to defendant's proportionate penalties clause claim here.

[6] Although *Dorsey* involved a juvenile defendant, rather than a young adult defendant, we do not believe that distinction is relevant or that it would alter the court's reasoning.

long before the filing of defendant's petition. See *Dorsey*, 2021 IL 123010, ¶ 74. Thus, we find that defendant has not satisfied the cause-and-prejudice test for his successive postconviction petition. Accordingly, we affirm the circuit court's dismissal of his motion for leave to file a successive petition under the Act.

¶ 54     Affirmed.