2022 IL App (1st) 200697-U
Order filed February 17, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-20-0697

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 10438 |
| | ) | |
| ANDRE HARRIS, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition where he failed to satisfy the cause-and-prejudice test for his claim that his 40-year sentence was unconstitutional.

¶ 2   Defendant Andre Harris appeals the denial of his *pro se* motion for leave to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, he contends that he established cause and prejudice for his claim that his 40-year sentence violates the eighth amendment (U.S. Const., amend. VIII) under *Miller v.*

*Alabama*, 567 U.S. 460 (2012), and its progeny. He also asserts his sentence violates the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11), and argues that *Miller* and its progeny should apply to him although he was 20 years old on the date of the offense. For the following reasons, we affirm.

¶ 3    Following a bench trial, defendant was convicted of murder under an accountability theory and aggravated battery. He received concurrent prison terms of 40 years and 5 years, respectively. We set forth the facts in our orders on direct appeal (*People v. Harris*, No. 1-08-1377 (Oct. 18, 2010) (unpublished order under Illinois Supreme Court Rule 23)) and appeal from the dismissal of his initial postconviction petition (*People v. Harris*, 2015 IL App (1st) 122830-U), and we recite them here to the extent necessary to our disposition.

¶ 4    Defendant, William Chatman, Joseph Tillman, and Ravonna Bledson were charged with first degree murder and aggravated battery in connection with the beating and shooting of Ana Sepulveda on September 17, 2001.[1]

¶ 5    At trial, the evidence showed that defendant, Chatman, Tillman, and Bledson were members of the Gangster Disciples street gang and were celebrating defendant's twentieth birthday in an apartment in Chicago. At some point, Chatman brought Sepulveda, who was a member of a rival gang and had recently discharged a firearm into the apartment toward defendant. Defendant pointed a firearm at Sepulveda, and he and the others beat her by kicking and "stomping" her. Defendant stated that they needed to kill her before they were killed or incarcerated. After

---

[1] William Chatman, Joseph Tillman, and Ravonna Bledson are not parties to the instant appeal. Tillman and Chatman pled guilty to first degree murder and each received 21 years' imprisonment, while Bledson was acquitted of murder. Defendant rejected the State's offer to plead guilty to murder in exchange for a 20-year sentence.

defendant and Tillman passed the firearm back and forth and debated who would kill Sepulveda, Tillman shot and killed her. In the following days, defendant attempted to create a false alibi, threatened witnesses, and helped coordinate cleaning the apartment. Defendant, Tillman, and Bledson then fled to Ohio, where defendant was arrested for an unrelated crime. He eventually confessed his involvement in Sepulveda's murder.

¶ 6     The trial court found defendant guilty of murder under a theory of accountability and aggravated battery.

¶ 7     Defendant's presentence investigation report (PSI) reflected prior convictions for attempted robbery in Ohio, robbery, "CTTB,"[2] theft, possession of cannabis, and carrying a firearm in a school. Defendant had pending cases for possession of a weapon and contraband in a penal institution and violating probation for his robbery conviction.

¶ 8     Defendant reported a good relationship with his mother, but was raised in an area of Chicago that was "gang and drug infested." When he was eight years old, defendant's family moved to Evanston, Illinois. Defendant reported being physically abused from ages 3 to 10 by his mother's boyfriend and that he continuously ran away from home. He was expelled from school in fourth grade for disciplinary issues and was enrolled in two schools for children with psychological and emotional issues. He was expelled from high school in tenth grade.

¶ 9     As a child, defendant was diagnosed with attention deficit hyperactivity disorder (ADHD), bipolar disorder, and impulse control disorder. He was treated for major depression at age 10 and had been prescribed psychotropic medications, which he ceased taking at age 16. Defendant stated he attempted suicide four times. He tried marijuana at age 9, started drinking alcohol at age 12,

_____

[2] The PSI does not define "CTTB."

and consumed both daily from age 15. He was a member of the Gangster Disciples street gang, and all of his friends were gang members.

¶ 10    Attached to the PSI were several "misconduct reports" from one of defendant's schools, showing his suspension for attacking three students in separate incidents at age 10. Records from another school documented defendant's tendencies to be "drawn to negative group behavior" and "physically victimize weaker peers to either take out his frustrations or impress his fellow peers."

¶ 11    At sentencing, the State argued in aggravation that defendant had "the strongest motive to kill *** Sepulveda" because he told his friends that she had shot at him. Defendant was on probation for robbery when he committed the instant offense, had been convicted of attempted robbery in Ohio after fleeing there following the crime, and his crimes had "escalate[d]." While incarcerated for Sepulveda's murder, defendant was charged with possession of contraband in a penal institution after he was caught chasing another inmate with a homemade knife. Shortly thereafter, defendant was again charged after a shank was found hidden in his court documents. The State argued that defendant was dangerous and had minimal rehabilitative potential given his criminal history and lack of remorse.

¶ 12    In mitigation, defendant's mother testified defendant had suffered from mental health problems as a child, took medications, and at one point, had been placed in a group home. Defense counsel argued that defendant was not the shooter, who pled guilty and received 21 years in prison. Counsel emphasized defendant's mental health problems, noted he was not taking medication at the time of the murder, and may have self-medicated with drugs and alcohol. In allocution, defendant stated that he was young and did not know how to tell the others to stop harming

Sepulveda. Regarding the pending charges of possessing contraband in a penal institution, defendant indicated that he was in a "hard" division at the jail.

¶ 13    In imposing sentence, the court called the offenses "brutal, cold-blooded, [and] premeditated," adding that, "Brutal is an understatement." It noted defendant was on probation at the time of the incident and committed subsequent violent acts. The court called defendant "dangerous" and referenced other violent incidents reported in his PSI, including multiple "well documented" attacks on other students. It noted defendant's prior convictions for carrying and possessing a firearm in school and battery, and his probation violation.

¶ 14    The court stated that it considered the PSI, the arguments from both parties, and the factors in aggravation and mitigation. Although it was "hard" to identify statutory mitigating factors "that applied in this case," the court noted defendant was only 20 years old at the time of the murder. The court stated, "I'm still considering [defendant's] youth and considering the challenges he faced. Apparently their [*sic*] was a boyfriend of Mom that did something horrible to him. He does have mental health issues. I've taken those into account." It concluded that, "based on the facts of this case and the dangerousness that [defendant] presents to society as he's shown over and over again for fifteen years, I believe that a substantial sentence is in order." The trial court sentenced defendant to concurrent prison terms of 40 years for murder and 5 years for aggravated battery.

¶ 15    We affirmed defendant's convictions on direct appeal over his claim that the trial court erred in failing to appoint new counsel for his posttrial claim of ineffective assistance. *Harris*, No. 1-08-1377 (Oct. 18, 2010) (unpublished order under Illinois Supreme Court Rule 23). We also affirmed the summary dismissal of his initial postconviction petition, where he argued his sentence

constituted a "trial tax" and was unconstitutionally disparate to his co-offenders' sentences. *Harris*, 2015 IL App (1st) 122830-U.

¶ 16    On February 15, 2019, defendant filed the instant *pro se* motion for leave to file a successive postconviction petition, alleging his 40-year sentence for a crime committed when he was 20 years old violated the eighth amendment and the proportionate penalties clause based on *Miller* and its progeny. Defendant contended he established cause for bringing his claim because the underlying cases were not yet decided when he filed his initial postconviction petition in May 2012. At the time of the offense, he was "more similar in mental capacity and prone to the same whims as a juvenile than a full grown adult," and his sentence failed to reflect his rehabilitative potential. Moreover, he did not "pull the trigger" yet received a harsher sentence than his co-offenders who were also juveniles or young adults.

¶ 17    In the memorandum attached to his motion, defendant reiterated his claim, emphasizing that "juveniles have diminished culpability and greater prospects for reform" and his sentence did not reflect his rehabilitative potential. He added that he was "considerably different and mature in his intelligence and his approach to life now."

¶ 18    Defendant attached several articles regarding research on brain development, which discussed that emerging research showed juveniles' brains were still developing and did not reach full maturity until the mid-20s.

¶ 19    On March 6, 2020, the circuit court denied defendant leave to file a successive petition, finding his sentence did "not even arguably violate *Miller*" where it was not a *de facto* life term.

¶ 20    On appeal, defendant contends his claim that his 40-year sentence violated the eighth amendment and the proportionate penalties clause satisfied the cause-and-prejudice test for filing a successive postconviction petition.

¶ 21    The Act permits criminal defendants to challenge their convictions or sentences on constitutional grounds. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). The Act generally contemplates the filing of only one petition. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009); see also 725 ILCS 5/122-3 (West 2016). To file a successive postconviction petition, a defendant must first obtain leave of court. See 725 ILCS 5/122-1(f) (West 2016); *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010).

¶ 22    The bar against successive proceedings is relaxed only where the defendant can establish (1) cause and prejudice for failing to raise the claim earlier, or (2) actual innocence. 725 ILCS 5/122-1(f) (West 2016); *People v. Edwards*, 2012 IL 111711, ¶¶ 22, 23. Here, defendant asserts that he has satisfied the cause-and-prejudice test.

¶ 23    A defendant need only set out a *prima facie* case at the leave-to-file stage. *People v. Bailey*, 2017 IL 121450, ¶ 24. "It is the defendant's burden to demonstrate both cause and prejudice for each claim raised in his successive petition." *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008). Cause constitutes an objective factor that impeded the defendant's ability to raise a specific claim during his initial postconviction proceedings, and prejudice exists when the alleged error so infected the trial that the resulting conviction or sentence violated due process. 725 ILCS 5/122-1(f) (West 2018).

¶ 24    "[A] defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirements if the motion adequately alleges facts

demonstrating cause and prejudice." *People v. Smith*, 2014 IL 115946, ¶ 33. "To meet the cause-and-prejudice test *** requires the defendant to submit 'enough in the way of documentation to allow a circuit court to make that determination.' " (Internal citations omitted.) *Id.* ¶ 35. Leave to file a successive postconviction petition "should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petition fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." (Internal citations omitted.) *Id.* We review a trial court's ruling on a motion for leave to file a successive postconviction petition *de novo. Id.* ¶ 13.

¶ 25    We address defendant's eighth amendment claim first. The parties agree that defendant established cause for failing to raise this claim earlier because the underlying case law was decided after he filed his initial postconviction petition. We agree (see *People v. Dorsey*, 2021 IL 123010, ¶ 35), and thus limit our analysis to whether defendant's eighth amendment claim satisfies the prejudice prong.

¶ 26    The eighth amendment prohibits "cruel and unusual punishments" and applies to the states through the fourteenth amendment. U.S. Const. amend. VIII; *People v. Davis*, 2014 IL 115595, ¶ 18. In *Miller*, the Supreme Court held that mandatory life sentences without parole for juveniles under age 18 at the time of their crimes violates the eighth amendment's prohibition against cruel and unusual punishments. Following that decision, the Illinois supreme court held that *Miller* and its progeny apply to defendants who committed offenses as juveniles and received life imprisonment, whether the sentence was mandatory or discretionary, for natural life or a *de facto* life term, and whose sentencing court failed to consider their youth and its attendant characteristics.

*People v. Buffer*, 2019 IL 122327, ¶ 27. The *Buffer* court also held that a prison sentence of over 40 years imposed on a juvenile offender constitutes a *de facto* life term. *Id.* ¶ 41.

¶ 27    Defendant was convicted of first degree murder on a theory of accountability. He argues that, although he was 20 years old when he committed the offense, he was entitled to *Miller*'s protections for juveniles based on the articles attached to the motion explaining that the juvenile brain does not fully develop until the mid-20s. He argues on appeal that his PSI demonstrated his mental state was more similar to that of a juvenile than an adult. Thus, defendant contends that his *de facto* life sentence of 40 years' imprisonment is unconstitutional because the trial court did not fully consider the characteristics of his youth or his rehabilitative potential.

¶ 28    Here, under *Buffer*, defendant's sentence of exactly 40 years does not constitute a *de facto* life sentence for a juvenile, much less a 20-year-old offender. See *id.*; see also *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 28 (19-year-old offender sentenced to a 55-year term for murder could not invoke eighth amendment because "the categorical findings made by *Miller* and its progeny under the federal eighth amendment apply only to juveniles"); *cf. People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 44-45 (in the context of a proportionate penalties claim, finding *Buffer*'s rule concerning 40-year lower limit for *de facto* life sentences for juveniles did not necessarily apply to a 19-year-old youthful offender). Defendant therefore cannot demonstrate prejudice with respect to an eighth amendment claim.

¶ 29    We next consider defendant's claim that his sentence violates the proportionate penalties clause of the Illinois Constitution.

¶ 30    Pursuant to the proportionate penalties clause, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if " 'the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Carrion*, 2020 IL App (1st) 171001, ¶ 29 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002)). Our supreme court has never defined what constitutes a cruel or degrading sentence that is "wholly disproportionate to the offense" because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Miller*, 202 Ill. 2d at 339. "To determine whether a sentence shocks the moral sense of the community, a reviewing court considers the objective facts of the case in light of 'the community's changing standard of moral decency.' " *People v. Gomez*, 2020 IL App (1st) 173016, ¶ 30 (quoting *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008)).

¶ 31    Defendant was 20 years old at the time of the offense and actively participated in the crimes by brutally beating Sepulveda, telling his friends they needed to kill her, and then passing the firearm to another co-offender to kill her. Defendant then instructed other people to clean the scene, threatened witnesses, attempted to create a false alibi, and fled to Ohio, where he participated in another violent crime. Defendant's 40-year sentence following these events is not cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community.

¶ 32    Defendant argues on appeal that his age at the time of the crime and his background, including childhood diagnoses for various mental illnesses and suffering physical abuse, demonstrate that his brain was more akin to that of a juvenile than that of an adult. He claims the sentencing court did not consider his youth and attendant circumstances in imposing sentence, thus violating the proportionate penalties clause.

¶ 33 Although the parties again agree that defendant satisfied the cause prong with respect to this claim, we disagree. Defendant relies on *Miller* and subsequent Illinois cases, which were decided after he filed his initial petition, to support his claim. However, *Miller* was decided in the context of an eighth amendment claim, not a proportionate penalties clause claim. Our supreme court recently found that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123010, ¶ 73. The court explained that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* (citing *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59 (finding the defendant failed to establish cause for bringing his proportionate penalties clause claim in a successive petition and noting the subsequent emergence of additional support for a claim does not establish cause for failing to bring the claim in earlier proceedings)).

¶ 34 In light of this ruling, we find defendant cannot establish cause for failing to raise his proportionate penalties claim in his initial postconviction petition. See *id.*; see also *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 72 (finding the juvenile defendant relying on *Miller* and its progeny could not establish cause for failing to bring a proportionate penalties clause claim in an earlier postconviction petition); *People v. Howard*, 2021 IL App (2d) 190695, ¶ 39 (finding the same for a young adult offender).

¶ 35    In sum, defendant has failed to establish prejudice for his eighth amendment claim and cause for his proportionate penalties clause claim. Accordingly, we affirm the trial court's denial of leave to file a successive postconviction petition.

¶ 36    Affirmed.