**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200003-U

Order filed February 10, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-20-0003 Circuit No. 89-CF-1176 |
| ROGER SHAW, | ) ) | Honorable Sarah F. Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice O'Brien and Justice Lytton concurred in the judgment.

**ORDER**

¶ 1　　*Held*:　The circuit court did not err in denying defendant leave to file a successive postconviction petition.

¶ 2　　Defendant, Roger Shaw, pled guilty to two counts of first degree murder, one count of home invasion, and one count of armed robbery committed when he was 15 years old. The court sentenced him to concurrent sentences of 80 and 30 years' imprisonment for felony murder and home invasion, respectively, under a sentencing scheme that allowed for a day-for-day good-conduct credit. Defendant engaged in numerous unsuccessful direct and collateral attacks on his

sentence. In this appeal, defendant argues the circuit court's denial of his *pro se* petition requesting leave to file a successive postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) constituted error. The circuit court found that defendant failed to plead cause and prejudice. Defendant argues that his sentence violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. We affirm the lower court's denial of the request for leave to file a successive postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Defendant's Guilty Plea

¶ 5        In April 1990, defendant pled guilty to one count of felony murder based on armed robbery and one count of home invasion for breaking into the home of Isabel Gloria, stabbing her to death, and stealing numerous items from her home. Defendant was 15 years old at the time. The guilty plea was an open plea, allowing for the State to argue for any penalty applicable to the offenses and the circuit court to determine the appropriate sentence.

¶ 6        The State presented the factual basis to the court as follows. On December 4, 1989, at 2:20 p.m., Isabel's husband, Henry Gloria, found the nude, dead body of Isabel on their enclosed porch. Her clothing was found in a pile near the refrigerator in the kitchen of the Gloria residence. Defendant later confessed to stabbing Isabel with a knife. Defendant confessed that his motivation at the time was to see Isabel "naked." The autopsy report revealed the cause of death as multiple stab wounds to the chest, head, abdomen, and extremities. Isabel also had defensive wounds on her forearms. Analysis of Isabel's fingernail clippings revealed a blood type consistent with that of defendant. The knife used to stab Isabel measured 7¼ inches in length. The knife was found lodged in Isabel's wrist.

¶ 7        If called on at trial, Henry Gloria would testify that defendant was a neighbor from across the street. Henry knew defendant for a number of years. Defendant mowed his yard; Henry would take defendant to Dairy Queen. A number of personal items were missing from the house, including a 1978, 100-peso coin, a black onyx diamond ring, a bracelet with the name "Qui" on it, a class ring, a gold ring, wedding rings, and other items. Isabel was the mother to the couple's three children ranging in age from 5 to 11 years old.

¶ 8        Members of the Joliet Police Department conducted a search of the house that defendant was staying in adjacent from the Gloria residence. The missing items from the Gloria residence were found in a plastic bag located between the mattress and box spring of a bed. In the same room that the missing items were discovered, officers found a spiral notebook and a piece of paper with defendant's name on it. A piece of paper from the spiral notebook was found in the Gloria residence containing a note to Isabel. Forensic examination indicated a "strong probability" defendant authored the note. The note contained a message to the effect that the author had a knife and Isabel should not scream. Photographs taken by police show that defendant had a scratch on both his face and stomach.

¶ 9        The evidence produced at trial would also show that defendant had a conversation with Rosie Pinnick, a neighbor, not far from the murder scene on the same day as the offense. Defendant confessed to Pinnick that "he stabbed a friend of his and felt that the friend could be dead." Defendant claimed he acted in self-defense stating, "the friend had hit him in the head." Defendant also had a conversation with Tony White. Defendant told White that "he messed up a Mexican lady" and also questioned White on whether "people's bowels move when they are dead." Isabel was ethnically Hispanic. White noticed spots of blood on defendant's clothing during the conversation. Two more individuals witnessed this conversation take place although they were not

privy to the content thereof. One individual noticed what appeared to be a dark substance, possibly nail polish, on defendant's clothing.

¶ 10    Defendant agreed to the factual basis and the court accepted the State's proffer. Following a recess, defendant made a statement to the court aimed at "correcting" the State's factual basis. Defendant claimed he did not inflict the fatal stab wound to Isabel but merely stabbed her in the stomach. There was another individual present. Defendant and the other individual were looking for money to purchase drugs. They decided to target the Gloria residence. Defendant retrieved a knife from his grandmother's. He also wrote a note on a piece of paper. He went to the Gloria residence, gave Isabel the note, and then he and the other individual rushed into the home knocking her down. Defendant instructed the other individual to hold Isabel while he went upstairs to look for a gun. Unable to locate a gun, he began grabbing items of value instead. Isabel broke free, running into the kitchen. Defendant and his accomplice regained control of Isabel and forced her to remove her clothing. Isabel broke free again and armed herself with an iron. During her attempt to escape, defendant stabbed her in the stomach while the other individual stabbed her in the back. Defendant ran back upstairs and stuffed his pockets full of more items. While upstairs, the other individual stabbed Isabel multiple times. The court found there was still a sufficient factual basis for defendant's plea.

¶ 11                    B. Sentencing

¶ 12    The matter proceeded to sentencing. The State recommended a natural life sentence without the possibility of parole, noting the offense was "something out of a horror movie," accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. The State argued defendant posed a continuing threat and exhibited bitterness and hatred toward women such that he was likely to reoffend. Defense counsel argued there were mitigating factors in

defendant's background, indications of rehabilitative potential, and that a sentence of life without the possibility of parole was inappropriate. Counsel argued that defendant's youth and the unfortunate circumstances surrounding his upbringing had to be considered as mitigating factors.

¶ 13　　　　In imposing defendant's sentence, the court commented that it had researched appellate court cases on juvenile sentencing in matters similar to the one before it. Considering the evidence and arguments, the court found the offense exceptionally brutal, heinous, and indicative of wanton cruelty. The court noted defendant's history of delinquency, that he was not mentally impaired, and a pattern "of not being able to conform to society." The court found in aggravation that the facts of the crime suggested that the offense was premeditated, noting defendant came to the Gloria residence with a knife and a note telling Isabel not to scream. The court found in mitigation that defendant pled guilty, expressed remorse, that he came from a socially deprived background, he was abused, and was deprived the nurturing and guidance one would want for a child. The court found it "very significant" that "we are dealing with a very young person in this case." Unconvinced that defendant deserved a life sentence, the court instead imposed a sentence of 80 years for felony murder to be served at 50% if defendant was able to amass the possible day-for-day good-conduct credit provided for under the sentencing scheme.

¶ 14　　　　　　　　　　C. Subsequent Challenges to Sentence

¶ 15　　　　Following sentencing, defendant sought to withdraw his guilty plea and vacate his conviction or, in the alternative, modify or reduce his sentence. The court denied defendant's motion to withdraw his guilty plea, as well as the motion to modify or reconsider the sentence. The court also sentenced defendant to a concurrent sentence of 30 years on the home invasion charge. Direct appeals in *People v. Shaw*, No. 3-90-0707 (1991) (unpublished order under Illinois Supreme Court Rule 23), and *People v. Shaw*, No. 3-92-0073 (1992) (unpublished order under

Illinois Supreme Court Rule 23) followed. Neither appeal resulted in a change to defendant's sentence. Defendant filed the first collateral challenge to his sentence in 2000. Numerous collateral challenges including multiple postconviction petitions and multiple petitions for relief from judgment followed. None of these challenges succeeded.

¶ 16　　　　In August 2019, defendant filed a motion requesting the circuit court grant leave to file another successive postconviction petition. Relying on the decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, defendant argued that his 80-year sentence for a crime committed when he was 15 years old was unconstitutional as-applied under the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and under the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11). Defendant's successive postconviction petition asserted that the sentencing court did not adequately consider his youth and its attendant characteristics in imposing the sentence. Further, that the 80-year sentence amounted to an unconstitutional *de facto* life sentence as-applied under the eighth amendment to the United States Constitution and ran afoul of the Illinois proportionate penalties clause. The circuit court denied leave to file the successive petition, as well as a motion to reconsider. The court reasoned defendant failed to detail objective factors that prevented him from raising the constitutionality of the sentence nor did defendant explain the resulting prejudice.

¶ 17　　　　Defendant appeals.

¶ 18　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　The Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides an avenue for defendants to assert that there was a substantial denial of rights under the Constitution of the United States or of the State of Illinois, or both, in the proceedings resulting in defendant's conviction. *People v. Lusby*, 2020 IL 124046, ¶ 27 (quoting 725 ILCS 5/122-1(a)(1) (West 2014)). The Act only

contemplates defendant's filing of a single petition. *Id.* Accordingly, courts disfavor successive postconviction petitions as they plague the finality of criminal litigation. *People v. Davis*, 2014 IL 115595, ¶ 14. When bringing a successive petition, a defendant faces immense hurdles relating to procedural default and any subsequent allegation of a constitutional deprivation not previously raised is considered forfeited. *Id.* One basis for relaxing this procedural forfeiture is where the defendant can show "cause" and "prejudice" for failing to raise the claim earlier. 725 ILCS 5/122-1(f) (West 2018).

¶ 20   A defendant shows cause "by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018). Prejudice is evidenced "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* We review the denial of leave to file a successive postconviction petition *de novo. Lusby*, 2020 IL 124046, ¶ 27.

¶ 21                    A. *Miller* and its Progeny

¶ 22   Defendant argues the lower court erred in denying leave to file a successive postconviction petition owing to the fact that the 80-year sentence for a crime committed when defendant was 15 years old constitutes a *de facto* life sentence that was imposed without proper consideration of his youth and its attendant circumstances and absent a finding of permanent incorrigibility. Defendant avers he has shown the requisite cause and prejudice by asserting that *Miller* was decided after both his sentencing and initial postconviction petition, and that his sentence was imposed without adequate consideration of his youth at the time of the offense or a finding of permanent incorrigibility.

¶ 23 Defendant's opening brief was filed in March 2021. In July 2021, our supreme court decided *People v. Dorsey*, 2021 IL 123010, ¶ 48, finding that a sentence imposed under a statutory scheme that allows for an individual sentenced as a juvenile to be released after serving 40 years or less of the term of imprisonment imposed is not a *de facto* life sentence. The State argues that *Dorsey* obviates defendant's arguments relating to *Miller* and its progeny. In the alternative, the State argues the sentencing court engaged in considerations related to defendant's youth and attendant circumstances to such an extent that the court's sentence passes constitutional muster.

¶ 24 In *Miller*, the United States Supreme Court concluded that a mandatory life sentence without the possibility of parole prevented the consideration of a juvenile defendant's youth and attendant circumstances. *Miller*, 567 U.S. at 479. The Court made clear that when sentencing a juvenile defendant to life without parole, there must be "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. In *People v. Reyes*, 2016 IL 119271, ¶¶ 7-8, our supreme court applied the protections afforded in *Miller* to sentences constituting *de facto* life sentences. In *People v. Buffer*, 2019 IL 122327, ¶ 27, our supreme court thoroughly analyzed *Miller* and its progeny finding,

> "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Id.*

¶ 25 The *Buffer* court went on to establish a bright-line rule that a sentence that exceeds 40 years constitutes a *de facto* life sentence. *Id.* ¶ 41. As explained above, our supreme court recently issued its opinion in *Dorsey*, finding that day-for-day good-conduct credit is a factor to be considered

when determining whether a defendant received a *de facto* life sentence. *Dorsey*, 2021 IL 123010, ¶ 49. If the application of the day-for-day credit allows for an opportunity of release prior to the line drawn in *Buffer*, a challenge to a sentence pursuant to *Miller* must fail. *Id.* ¶ 50.

¶ 26    We agree with the State that *Dorsey* obviates defendant's challenge to his sentence pursuant to *Miller*. Considering the statutory scheme that allows for defendant to serve his 80-year sentence at 50%, as we must per *Dorsey*, defendant's sentence does not exceed the 40-year threshold laid out in *Buffer*. Ergo, his contention that his sentence is "essentially" a *de facto* life sentence that runs afoul of the eight amendment fails as a matter of law as "*Miller*'s additional protections for juvenile offenders apply only when a trial court lacks, or refuses to use, discretion in sentencing a juvenile offender to a life, or *de facto* life, sentence." *People v. Jones*, 2021 IL 126432, ¶ 28. The sentence complained of in this appeal qualifies as neither life nor a sentence that exceeds 40 years qualifying as a *de facto* life sentence. Defendant attempts to distinguish *Dorsey,* but those efforts are unpersuasive.[1] Defendant has an opportunity to demonstrate maturity and rehabilitation so that he only needs to serve 40 years of his aggregate sentence. See *Dorsey*, 2021 IL 123010, ¶ 50. Accordingly, defendant failed to advance constitutional claims cognizable under *Miller*. The lower court properly denied his motion for leave to file a successive postconviction petition based on this claim.

¶ 27    Even if defendant's sentence was 80 years and one day to be served at 50%, thereby invoking the additional protections afforded by *Miller*, the lower court explicitly considered defendant's youth, attendant circumstances, and the unfortunate circumstances surrounding his childhood in mitigation. Even though the sentencing hearing took place approximately 22 years

---

[1] We also note defendant relies on *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 14 *vacated*, No. 125340, (Ill. Nov. 24, 2021) (supervisory order). A case that was vacated by *Dorsey*.

before *Miller*, the hearing was nonetheless *Miller* compliant. The court found it "very significant" that defendant was a youthful offender and opined it was " not convinced that this is a case where the court should impose a life sentence." The court declined the State's request to sentence defendant to a term of natural life in prison and then exercised its discretion in sentencing defendant.

¶ 28 Moreover, defendant's contention that the court erred in failing to make an express finding of incorrigibility is laid waste by the recent decision of *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). In *Jones*, the United States Supreme Court found that *Miller* does not mandate an express finding of permanent incorrigibility before imposing a sentence of life without parole on a juvenile defendant. *Id.* at 1318-19. Given that defendant's sentence is not a life sentence in any sense and *Miller* does not mandate an express finding of incorrigibility, defendant's claim is not cognizable under the eighth amendment.

¶ 29                                B. Proportionate Penalties Clause

¶ 30 Defendant argues that, even if we find the challenge to his sentence pursuant to *Miller* fails —which we do—his sentence nonetheless violates the proportionate penalties clause of the Illinois Constitution where the court imposed defendant's sentence absent both an appropriate consideration of his youth and an express finding of irreparable incorrigibility. Defendant essentially regurgitates the arguments under his *Miller* claim to support his proportionate penalties clause claim.

¶ 31 The proportionate penalties clause of the Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This provision prohibits punishment that "is cruel, degrading, or so wholly disproportionate to the offense as to shock the

moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). Proportionality is determined in view of "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340. Again, defendant must establish cause and prejudice to pursue this claim in a successive postconviction petition. See *supra* ¶ 20.

¶ 32      Defendant argues he was unable to raise his proportionate penalties argument in his initial postconviction petition pointing to *Miller* and subsequent cases creating new constitutional rules that were unavailable to him. *Miller* was decided in 2012—12 years after defendant filed his initial postconviction petition. The State concedes in its brief that defendant has sufficiently pled cause for failing to previously raise this claim. We are not bound by this concession. *People v. Austin*, 2019 IL 123910, ¶ 42.

¶ 33      Citing *Leon Miller*, 202 Ill. 2d at 340-43, defendant argues "[t]he Illinois Supreme Court has repeatedly recognized, both before and after the United States Supreme Court's watershed decision in *Miller*, 'the long-standing distinction in Illinois between adult and juvenile offenders,' and that young defendants have greater rehabilitative potential." We agree. There is a longstanding distinction in Illinois between adult and juvenile offenders. See *People ex rel. Bradley v. Superintendent, etc., of Illinois State Reformatory*, 148 Ill. 413, 423 (1894). However, the above-quoted statement from defendant's briefing in itself evidences a failure to plead cause for not previously raising this claim in the numerous challenges lodged against his sentence.

¶ 34      We again turn to *Dorsey* to find support for this logic. In addition to the claim under *Miller*, the defendant in *Dorsey* also advanced a proportionate penalties clause argument. Although the court in *Dorsey* found the defendant's proportionate penalties claim in the successive petition

forfeited and barred by *res judicata*, even absent forfeiture and *res judicata*, the court found the defendant failed to establish cause. *Dorsey*, 2021 IL 123010, ¶¶ 70, 74. The court explained:

> "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause. See *Patterson*, 2014 IL 115102, ¶ 97 ('A ruling on a specific flavor of constitutional claim may not justify a similar ruling brought pursuant to another constitutional provision.')." *Id.* ¶ 74.

¶ 35       The court also found *People v. LaPointe*, 2018 IL App (2d) 160903, instructive. *LaPointe* found that the proportionate penalties clause "was in existence" when the defendant in that case filed his initial postconviction petition and citation to *Miller* in a subsequent request for leave to file did not provide cause for a successive petition based on the clause. *Id.* ¶ 55. As defendant, *Dorsey*, and *LaPointe* all acknowledge, Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Ergo, *Miller*'s unavailability prior to 2012 at best deprived defendant of "some helpful support" for his state constitutional law claim, which is insufficient to establish "cause." *Id.* ¶ 59; see also *People v. Guerrero*, 2012 IL 112020, ¶ 20 ("[T]he lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review."). Accordingly, defendant did not establish a *prima facie* case for cause for failing to previously raise the proportionate penalties clause argument. Accordingly, the lower court did not err.

¶ 36                                    III. CONCLUSION

¶ 37       For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 38       Affirmed.