2022 IL App (1st) 200317-U

No. 1-20-0317

Second Division
September 13, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 01 C 17920(01) |
| v. | ) | |
| | ) | |
| FERNANDO GOMEZ, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Lavin concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's judgment denying defendant leave to file a successive postconviction petition is affirmed where defendant could not establish the requisite cause.

¶ 2     Following a jury trial, defendant-appellant Fernando Gomez was found guilty of first degree murder and sentenced to 40 years' imprisonment. Defendant's conviction and sentence were affirmed on direct appeal (*People v. Gomez*, No. 1-04-0190 (2005) (unpublished order under

No. 1-20-0317

Illinois Supreme Court Rule 23)), and the denial of his initial *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) was also affirmed (*People v. Gomez*, Nos. 1-09-2663, 1-10-0849 (2011) (unpublished order under Illinois Supreme Court Rule 23)). Defendant now appeals from the trial court's denial of his motion for leave to file a successive postconviction petition. On appeal, defendant, who was 19 years old at the time of the underlying offense and was convicted on a theory of accountability, argues that he established both cause and prejudice for his claims that his 40-year sentence violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution as applied to him. For the reasons that follow, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4      A complete recitation of the facts and evidence leading to defendant's conviction and sentence can be found in this court's order affirming the trial court's judgment on direct appeal. *People v. Gomez*, No. 1-04-0190 (September 19, 2005) (unpublished order under Illinois Supreme Court Rule 23). We provide here only those facts necessary to the resolution of this appeal.

¶ 5      Defendant, along with his co-defendants and fellow Latin Kings gang members, Raul Ramirez and Joel Villasenor, were charged with first degree murder for the June 17, 2001 shooting of a Latin Counts gang member, Juan Avalos.[1]

¶ 6      Three days after the shooting, defendant was arrested and taken to the police station, for questioning. He initially denied involvement, but later admitted to serving as a "lookout" after detectives informed him that Ramirez and Villasenor had implicated him. Eventually, defendant

_____

[1] Ultimately, Ramirez pled guilty to conspiracy to commit murder and was sentenced to 42 months in prison, and Villasenor pled guilty to conspiracy to commit murder and agreed to testify against defendant in exchange for a sentence of 7 years in prison.

gave a videotaped statement to the police in which he stated that on June 16, 2001, he was in a car with other individuals near 96th Street and Exchange Avenue when Latin Counts gang members fired at the car, injuring Angelo Perez. The following evening, Villasenor gave defendant a gun to retaliate against the Latin Counts. However, defendant was unable to go through with the shooting because he was "drunk and high." Defendant then gave the gun to Ramirez, who walked towards the Latin Counts, fired several shots, ultimately killing Avalos.[2]

¶ 7     Defendant's jury trial began on October 14, 2003. Villasenor testified on behalf of the State. He first acknowledged that he was currently incarcerated because of his involvement in the victim's murder and that he was testifying as part of a plea agreement. He testified that, on June 16, 2001, he was present when Perez was shot by the Latin Counts. Then, on June 17, 2001, defendant asked him where he could get a gun. Villasenor met with defendant at Villasenor's house, and Villasenor gave defendant a gun. Later that evening, defendant called Villasenor and informed him that someone had been shot near Villasenor's sister's house. Villasenor took this to mean that defendant had shot a Latin Count. On cross-examination, Villasenor admitted that he provided a gun to defendant and he knew "why he was doing it."

¶ 8     Defendant testified on his own behalf. He admitted to speaking to Villasenor on June 17, 2001, but denied asking for a gun. He confirmed that he went to Villasenor's house that night and Villasenor gave him a gun. After arriving at the location where the shooting took place, defendant and Ramirez exited the car and began walking down a gangway. At some point, defendant stopped because he was "messed up" and "couldn't go" through with "what [he] had intended to do at first[,]" namely shoot at the Latin Counts members. According to defendant, Ramirez took the gun

---

[2] Prior to trial, defendant moved to suppress this statement. Following a hearing, the trial court denied defendant's motion.

and continued along the gangway. Defendant turned around and began walking towards the car. He then heard gunshots and ran to the car. Ramirez also ran back to the car and they left the scene. He denied telling Villasenor that he had committed the shooting.

¶ 9 On cross-examination, defendant testified that Villasenor gave defendant the gun so that defendant could shoot at the Latin Counts and that, when Ramirez took the gun from him, he knew what Ramirez was going to do. He admitted that it was his idea to shoot a Latin Count and that the shooting would not have happened without him. On redirect examination, defendant stated that after exiting the car, he became scared and did not want to give Ramirez the gun.

¶ 10 Ultimately, the jury found defendant guilty of first degree murder. Defendant's motion for a new trial was denied.

¶ 11 On December 19, 2003, the trial court held a sentencing hearing. The State requested a "substantial sentence" in light of defendants gang membership and history of delinquency. Specifically, the State noted that, as a juvenile, defendant received probation for unlawful use of a weapon, and while he was on probation for that offense, he was charged with and later convicted of a gang-related murder for which he received a sentence of four years. After his release, defendant was charged in the instant case. While on bond in the instant case, defendant was arrested for possession of a controlled substance. Finally, the State asserted that defendant had been a member of the Latin Kings since the age of 13.

¶ 12 In mitigation, defense counsel argued that, in regards to the first murder, defendant was only 14 years old and was not alleged to have been the shooter. Counsel also pointed to defendant's failure to follow through with the shooting in the instant case, as well as his cooperation with the police. Additionally, counsel noted defendant's young age, the support of his family, his ability to

maintain employment, and the fact that defendant was no longer an active member of the Latin Kings. Counsel requested the minimum sentence of 20 years' imprisonment.

¶ 13   In allocution, defendant stated: "Just I hope everything works out. My blessings go out to the family. That's it."

¶ 14   In issuing its sentence, the trial court stated as follows:

"Mr. Gomez, taking into consideration what the State has presented in aggravation, what your attorney has presented in mitigation, I'm aware of what the legislature has done as to what they're saying good credits are at this time. What they are in the future, I don't know what they will be. But I don't believe it falls into the point of being a minimum sentence.

Although they're juvenile offenses, you were charged with having a gun and that probation was terminated unsatisfactorily with murder that involved the statement where you were, as the State has pointed out, this is one with retaliation once again between gangs. It happens much too often on our streets. Usually, it's some innocent people. In fact, in your statement, it states three innocent people were shot *** [.]

And then within two months of being released on that murder, you're now charged with this murder.

As part of the argument for aggravation as to keep others from doing this, it's a sign of what our justice system is. You can't decide that you're going to go out, have a few beers, and find a gun and shoot at somebody. And in this case, kill them."

The court then sentenced defendant to 40 years' imprisonment. Defendant's motion to reconsider his sentence was denied.

¶ 15    On direct appeal, defendant argued that the trial court erred in denying his motion to suppress his videotaped confession, and this court affirmed. *Gomez*, No. 1-04-0190.

¶ 16    On May 12, 2006, defendant filed an initial *pro se* petition for postconviction relief, claiming, *inter alia*, that his trial counsel was ineffective for failing to investigate and present mitigating evidence at sentencing, and for failing to object to the prosecutor's inflammatory remarks during closing argument. A supplemental petition was filed on February 11, 2009, which argued that trial counsel was ineffective for not challenging the illegality of defendant's arrest based on lack of probable cause and for failing to submit a conspiracy to commit murder jury instruction. The State filed a motion to dismiss, which the trial court granted. This court affirmed the dismissal. *People v. Gomez*, Nos. 1-09-2663, 1-10-0849 (June 30, 2011) (unpublished order under Illinois Supreme Court Rule 23). Our supreme court denied defendant's petition for leave to appeal. *People v. Gomez*, No. 112842 (Nov. 30, 2011).

¶ 17    On June 3, 2019, defendant filed a motion for leave to file a successive postconviction petition. Therein, he argued that his 40-year sentence violated the eighth amendment and the proportionate penalties clause as applied to him because he was 19 years old at the time of the offense and Illinois only recently acknowledged that young adults could be afforded the same *Miller* considerations as juveniles. Attached to his petition were articles advocating for the expansion of juvenile sentencing rules to emerging adult offenders. On November 21, 2019, the trial court denied defendant leave to file his June 3, 2019, successive petition because he was not a juvenile and he did not receive a *de facto* life sentence.[3]

---

[3] The court's written order solely addresses defendant's eight amendment argument and does not expressly address the arguments relating to the proportionate penalties clause.

¶ 18 On July 25, 2019, defendant filed a motion seeking leave to file a supplemental petition, asserting an additional claim that the trial court erred by finding him guilty of murder because he was illegally detained by police for 32 days before a preliminary hearing.[4] On December 19, 2019, the trial court denied defendant leave to file his July 25, 2019 postconviction petition.[5]

¶ 19 This appeal followed.[6]

¶ 20                                    II. ANALYSIS

¶ 21 On appeal, defendant solely focuses on those challenges to his sentence that were contained in the June 3 petition. He contends that the trial court erred in denying him leave to file his successive postconviction petition, which contained claims of violations of his constitutional rights under the eighth amendment to the United States Constitution (U.S. Const., amend VIII) and under the Proportionate Penalties Clause of the Illinois constitution (Ill. Const. 1970, art. I, § 11) as applied to him. He asserts that his petition demonstrates *prima facie* cause and prejudice under the Act such that further proceedings are warranted.

¶ 22                              A. Standard of Review

¶ 23 The Act provides a method for a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates the filing of only one petition without leave of court. *People v. Lusby*, 2020 IL 124046, ¶ 27. Because successive postconviction petitions undermine the finality of criminal proceedings, the hurdles for these

---

[4] Defendant also filed a petition for relief from judgment pursuant to 735 ILCS 5/2-1401 (West 2018), arguing his 40-year sentence violated the eighth amendment. The trial court denied that petition, finding it untimely and barred by *res judicata*.

[5] In the order, the court makes clear that it considered defendant's July 25, 2019, petition to be separate from his June 3, 2019 petition.

[6] On February 27, 2020, this court entered an order allowing defendant's late notice of appeal.

petitions "are lowered in very limited circumstances." *People v. Tenner*, 206 Ill. 2d 381, 392 (2002).

¶ 24 To satisfy section 122-1 of the Act, the petitioner must demonstrate both cause for his failure to raise the claim in the initial petition and prejudice from that failure. *People v. Smith*, 2014 IL 115946, ¶ 33; see also *People v. Guerrero*, 2012 IL 112020, ¶ 15 (stating that both prongs must be satisfied for leave of court to be granted). The cause-and-prejudice test is a more difficult standard to satisfy than that required at the first stage for an initial postconviction petition (*Smith at* ¶ 35), To show cause, the petitioner must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2018). To show prejudice, the petitioner must demonstrate that the claim not raised during his initial postconviction proceedings so infected the resulting conviction or sentence that it violated due process. *Id.* It is the petitioner's burden to establish a *prima facie* showing of cause and prejudice before any further proceedings on his claims can occur. *People v. Bailey*, 2017 IL 121450, ¶ 24; *Smith*, 2014 IL 115946, ¶ 30.

¶ 25 Finally, "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. Whether the denial of defendant's motion for leave to file a successive postconviction petition was proper is an issue that we review *de novo*. *People v. Edgelston*, 396 Ill. App. 3d 514, 518 (2009).

¶ 26                                    B. *Miller*-Based Jurisprudence

¶ 27 Prior to our analysis, we set forth the foundational caselaw upon which defendant's claims are based. Defendant's as-applied constitutional challenge is rooted in a line of cases holding that the eighth amendment of the United States Constitution, which prohibits cruel and unusual punishment, affords heightened sentencing protections for juvenile defendants. See *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005) (eighth amendment prohibits the death penalty for juveniles who commit murder); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (eighth amendment prohibits mandatory life sentences without parole for juveniles who commit nonhomicide offense); *Miller v. Alabama*, 567 U.S. 460, 479 (2012) (eighth amendment prohibits mandatory life without parole sentences for juvenile offenders convicted of homicide). These cases illustrate the Court's concern with the most severe forms of punishment allowed under the Constitution, the death penalty and life without parole, particularly against children, who are "constitutionally different from adults for purposes of sentencing" as they are less mature, and more impulsive and vulnerable to peer pressure than adults. *Miller*, 460 U.S. at 471-74.

¶ 28 Specifically in *Miller*, the seminal case, the Court explained that a mandatory sentence precludes the sentencer from considering mitigating circumstances specific to youth and its attendant characteristics. *Id.* at 477-78. Pursuant to *Miller*, a juvenile defendant may be sentenced to life imprisonment without parole only if the trial court first determines that the juvenile defendant's conduct demonstrated "irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation."[7] *People v. Holman*, 2017 IL

---

[7] Recently, in *Jones v. Mississippi*, the U. S. Supreme Court held that sentencing courts are not constitutionally mandated under the eighth amendment to make a finding of "permanent incorrigibility" before sentencing a juvenile defendant to life without parole. ___ U.S. ___, ___, 141 S. Ct. 1307, 1318-19 (2021). The Court left to the states' discretion imposition of any sentencing mechanisms they see fit in cases involving juvenile defendants convicted of murder, such as, *inter alia*, prohibiting sentences of life without parole for juveniles. *Id.* at ___, 141 S. Ct. at 1323. In *Dorsey*, our supreme court addressed *Jones*

120655, ¶ 46. *Miller*'s holding is comprised of both a substantive and procedural component. See *Montgomery v. Louisiana*, 577 U.S. 190, 206-211 (2016). The substantive component proscribes a mandatory sentence of life without parole for a juvenile offender. *Miller*, 567 U.S. at 465. *Miller*'s procedural component requires that a sentencer consider certain factors relevant to a juvenile's youth and its attendant characteristics prior to imposing a sentence of life imprisonment without parole. *Id.* at 469-70. Those factors include but are not limited to the juvenile defendant's (1) chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, or failure to appreciate risks and consequences; (2) family and home environment; (3) degree of participation in the homicide and any evidence of familial or peer pressure that may have affected him; (4) incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) prospects for rehabilitation. *Holman*, 2017 IL 120655, ¶ 46 (citing *Miller*, 567 U.S. at 477-78). Finally, we note that both the United States Supreme Court and our supreme court have held that *Miller* applies retroactively to cases on collateral review. *Montgomery*, 577 U.S. at 212; *People v. Davis*, 2014 IL 115595, ¶ 34.

¶ 29    The decisional law as it relates to juvenile sentencing continues to evolve. Significantly, our supreme court has expanded *Miller*'s protections beyond mandatory life sentences. First, in *People v. Holman*, the high court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." 2017 IL 120655, ¶ 40. Thus, a life sentence need not be mandatory for *Miller* protections to apply; a discretionary life sentence may also run afoul of *Miller* if the sentencer does not consider youth and its attendant characteristics.

_____

only in passing, suggesting, without more, that the holding of *Holman* in light of *Jones* is "questionable." *Dorsey*, 2021 IL 123010, ¶ 41.

¶ 30    Additionally, our supreme court expanded *Miller*'s reach to apply to juvenile offenders who receive, not only natural life sentences, but also *de facto* life sentences (*People v. Reyes*, 2016 IL 119271, ¶ 9), which the court later defined as a prison term of *more than* 40 years (*People v. Buffer*, 2019 IL 122327, ¶ 40). Specifically, the court in *Buffer* stated that a prison sentence of 40 years or less "provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" in accordance with *Miller*. (Internal quotation marks omitted.) 2019 IL 122327, ¶ 41 (citing *Miller*, 567 U.S. at 479).

¶ 31    With this background and these principles of law in mind, we now turn to defendant's petition.

¶ 32                    C. Defendant's Petition

¶ 33                    1. Eighth Amendment Challenge

¶ 34    We first address defendant's claim that his 40-year sentence violates the eighth amendment's prohibition against "cruel and unusual punishments." U.S. Const. Amend. VIII. Specifically, he argues that the eighth amendment is violated as applied to a youthful offender older than 18 years old "where, based on science and the defendant's individual circumstance[,] he demonstrates that he is sufficiently similar to juveniles such that *Miller*'s protections should apply."

¶ 35    Federal caselaw has unambiguously drawn the line for *Miller*-based claims under the eighth amendment at age 18. See *Roper*, 543 U.S. at 574. This age cutoff of 18 years old has also been reaffirmed by our supreme court in *People v. Harris*, 2018 IL 121932, ¶ 61 (finding that "the age of 18 marks the present line between juveniles and adults and nothing that claims requesting an extension of *Miller* to those 18 years old or older have been repeatedly rejected). As such, defendant's challenge to his sentence under the eighth amendment and *Miller* is foreclosed because

he was 19 years old at the time of the murder. See *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 49 ("It is well established that offenders who are 18 years and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases.").

¶ 36     "By now, it's clear that the categorical findings made by *Miller* and its progeny under the federal eighth amendment apply only to juveniles." *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 28. Nonetheless, in his reply brief, defendant contends that our supreme court in *Harris* "did not categorically foreclose an as-applied challenge for young adults under the [e]ighth [a]mendment[,]" as opposed to a facial challenge. Specifically, defendant points to the following statement in *Harris*: "To the extent that defendant may have intended to raise an as-applied challenge under the eighth amendment, that claim would fail for the same reason as his challenge under the Illinois Constitution failed, because no evidentiary hearing was held and no findings of fact were entered on how *Miller* applies to him as a young adult." 2018 IL 121932, ¶ 53.

¶ 37     Defendant reads the language in *Harris* too broadly. Nothing in *Harris,* which affirms 18 as the cutoff for eighth amendment claims*,* can be read to defeat *Miller*'s age limit requirement. The clear import of the discussion in *Harris* is that an as-applied challenge requires an evidentiary hearing. Further, we know of no case, and defendant does not cite to any from this court or our supreme court, that has expressly permitted a *Miller*-based as-applied challenge under the eighth amendment to proceed where the defendant was not a juvenile. See *People v. Savage*, 2020 IL App (1st) 173135, ¶ 61 ("Although defendant raises an as-applied challenge rather than a facial challenge, Illinois courts typically consider the sentencing claims of young adults under the proportionate penalties clause rather than the eighth amendment."). We decline departure from review of *Miller*-based as-applied challenges for young adult defendants under the proportionate penalties clause. See *McCullen v. Coakley*, 573 U.S. 464, 485 n. 4 (2014) ("[A] plaintiff generally

cannot prevail on an as-applied challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to him." (Emphasis removed.)). Defendant's age serves as a barrier to his *Miller*-based claim. As such, defendant's challenge to his sentence pursuant to the eighth amendment fails as a matter of law.

¶ 38    Additionally, we observe that defendant simply could not satisfy the cause-and-prejudice test for his eighth amendment claim because he received neither a natural life nor a *de facto* life sentence, a prerequisite for a *Miller*-based claim. See *Buffer*, 2019 IL 122327, ¶¶ 27, 40 (holding that only a term of more than 40 years constitutes a *de facto* life sentence that would trigger the protections of *Miller*; see also *People v. Thompson*, 2022 IL App (1st) 200463, ¶ 38 (holding that, even if the defendant was considered to be a juvenile, his postconviction sentencing claim cannot stand because he could obtain release upon serving 40 years of his sentence, which is not a *de facto* life sentence).

¶ 39                     2. Proportionate Penalties Clause Challenge

¶ 40    Defendant also contends that, based on *Miller* and its progeny, his 40-year sentence violates the proportionate penalties clause. In response, the State asserts that (1) defendant has not shown cause because *Miller* is not applicable to adult defendants; (2) defendant failed to allege specific facts necessary to establish prejudice; (3) defendant's sentence was not mandatory and thus *Miller* and its progeny do not apply; (4) defendant did not receive a natural or *de facto* life sentence; and (5) defendant's sentencing hearing was *Miller*-compliant.

¶ 41    We begin our analysis with a review of Illinois's proportionate penalties clause. Article I, section 11 of our constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This clause, commonly referred to as the proportionate penalties

clause, requires balancing the goals of retribution and rehabilitation, which necessitates a careful consideration of all the factors in aggravation and mitigation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We have held that Illinois's proportionate penalties clause provides greater protections against excessive punishment than does the federal constitution's eighth amendment. *People v. Fernandez*, 2014 IL App (1st) 120508, ¶¶ 46, 63; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 35 ("The purpose of the *** clause is to add a limitation on penalties beyond those provided by the eighth amendment."); see also *People v. Clemons*, 2012 IL 107821, ¶ 40 (the proportionate-penalties clause "which focuses on the objective of rehabilitation, went beyond the framers' understanding of the eighth amendment and is not synonymous with that provision"); but see *People v. Patterson*, 2014 IL 115102, ¶ 106 (stating that the proportionate penalties clause is "co-extensive with the eighth amendment's cruel and unusual punishment clause").

¶ 42 Since our supreme court's decision in *People v. Sharpe*, 216 Ill. 2d 481, 521 (2005), two forms of proportionate penalties claims are recognized under the clause.[8] As it stands, a statute may be deemed unconstitutionally disproportionate if (1) the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community; or (2) identical offenses are given different sentences. *Id.* at 521. Whether a sentence shocks the moral sense of the community is determined by considering both objective evidence and the community's changing standard of moral decency. *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

---

[8] Prior to the court's decision in *Sharpe*, three forms of proportionate penalties claims were available. See *People v. Davis*, 177 Ill. 2d 495, 503-04 (1997), *overruled by Sharpe*, 216 Ill. 2d 481. In *Sharpe*, the court eliminated one of the three forms, holding that cross-comparison claims were no longer viable under the Illinois's proportionate penalties clause. 177 Ill. 2d at 516-21. However, a defendant could continue to present disproportionality claims either if (1) the punishment for an offense was allegedly cruel and degrading or (2) identical offenses were given different sentences. *Id.* at 521.

¶ 43    In two cases, one involving a direct appeal and the other a section 2-1401 petition, our supreme court has recognized that young adult offenders may rely on the evolving neuroscience regarding brain development in juveniles and its correlation to maturity underpinning the *Miller* decision to support an as-applied challenge pursuant to the proportionate penalties clause of the Illinois Constitution. See *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (19-year-old defendant sentenced to a term of natural life in prison); *People v. Harris*, 2018 IL 121932, ¶ 48 (18-year-old defendant sentenced to 76 years in prison). In *Thompson* and *Harris*, the court opened the door for young adult defendants to demonstrate that their own specific characteristics and circumstances were so like those of a juvenile that the imposition of a life sentence, absent a *Miller*-compliant sentencing hearing, would violate the proportionate penalties clause. Additionally, *Thompson* and *Harris* stated that such claims would best be pursued through proceedings under the Act. *Thompson*, 2015 IL 118151, ¶¶ 43-44; *Harris*, 2018 IL 121932, ¶ 48.

¶ 44    Defendant has not previously presented what we might characterize as a general proportionate penalties claim. Meaning, he has not claimed, simply, that his sentence was cruel and degrading or that his sentence differed from that of another convicted of an identical offense. Indeed, such a claim would have been available to him on direct appeal. Here, in seeking postconviction relief, his proportionate penalties claim is instead cloaked in the rationale underpinning *Miller* and the decisional law following, and for that reason, is properly before us. See *Thompson*, 2015 IL 11815, ¶¶ 43-44; *Harris*, 2018 IL 121932, ¶ 48. Thus, we proceed to consider whether his successive postconviction petition comports with the dictates of the Act.

¶ 45                                    1. Cause

¶ 46    Pursuant to section 122-1(f) of the Act, leave of court to file a successive postconviction petition may only be granted if the petitioner first "shows cause by identifying an objective factor

that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings[.]" 725 ILCS 5/122-1(f) (West 2018). " '[A] showing that the factual or legal basis for a claim was not reasonably available to counsel *** would constitute cause under this standard.' " (Internal quotation marks omitted.) *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002) (quoting *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999)).

¶ 47    Here, defendant argues that he established cause because his claims are based on recent, substantive developments in the law and could not have been raised in his first postconviction petition. He continues that the landmark decisions of *Miller*, *Montgomery*, *House*, and *Davis* were not available when he filed his initial petition. Notably, defendant filed his initial postconviction petition in 2006, several years prior to the issuance of those cases. The State contends that defendant's argument fails nonetheless because *Miller* and its progeny are not applicable to defendant because he is not a juvenile; thus, those cases are not necessary for defendant's proportionate penalties clause claim as set forth in the instant petition.

¶ 48    We first acknowledge that our supreme court in *Davis* explicitly stated that *Miller*'s substantive component constitutes cause because it was not available earlier to counsel. 2014 IL 115595, ¶ 42. However, the substantive rule is only applicable in the context of a juvenile defendant's eighth amendment sentencing challenge. See *Montgomery*, 577 U.S. at 206-211. In contrast, here, defendant is not a juvenile and we are faced with the propriety of his sentence in the context of a proportionate penalties clause challenge. As such, neither facet of *Miller* is directly applicable to this claim. Even so, the State's argument would appear to overlook the clear language in *Thompson* and *Harris*, which permits postconviction petitioners to pursue *Miller*-based claims.

¶ 49    Defendant argues that since *Roper*, *Graham*, and *Miller* were decided, the brain research on which those cases relied has also evolved to show that the brains of young adults continue to

develop into their mid-20s. He then posits that "societal judgment on how to sentence emerging adults has begun to change," commenting that there is now strong evidence that the brain does not cease to mature until the early 20s in those relevant parts that govern, *inter alia*, impulsivity, judgment, planning, and foresight of consequences.

¶ 50    Although we believe our supreme court's recent decision in *People v. Dorsey*, 2021 IL 123010, is dispositive, in addressing defendant's arguments, we have occasion, and take this opportunity, to review early caselaw implicitly underpinning the *Dorsey* court's comment regarding cause. We agree with defendant that brain research continues to evolve and may be relied upon to both explain, as well as to mitigate, some behavioral conduct in juveniles. However, in light of Illinois's past treatment of juvenile offenders, we view the impact of such research on juvenile sentencing differently. In our view, "societal judgment" on how to sentence juveniles and youthful offenders emerged here in Illinois long before *Roper*, *Graham*, and *Miller*. See *People v. Davis*, 2014 IL 115595, ¶ 45 (holding that Illinois law recognized the "special status" of juvenile offenders before *Miller* and *res judicata* therefore barred relitigation of juvenile offender's challenge to sentence under the proportionate penalties provision of Illinois Constitution even though *Miller* was not decided until 2012). We are particularly mindful of *People ex rel. Bradley v. Superintendent*, 148 Ill. 413 (1894), a case decided by our supreme court more than a century ago. In *Bradley*, the court considered whether confinement of an 18-year-old and a 20-year-old to the Illinois State Reformatory for a "term of commitment to be terminated by the board of managers" of the Reformatory, but not to exceed 20 years, violated the proportionate penalties clause. *Id* at 415-420. Although the terms "neuroscience" or "brain research" appear nowhere in the court's decision, there was nonetheless a recognition by the court that minors behave differently than do mature adults and thus warrant different treatment. In affirming the minors'

sentences, the court stated that "[t]here is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors,—the habits and characters of the latter are presumably, to a large extent, as yet unformed and unsettled." *Id.* at 423.

¶ 51    A more recent example of "societal judgment" in sentencing juveniles may be found in *People v Leon Miller*, 202 Ill. 2d 328 (2002). We recognize that *Leon Miller* is a direct appeal involving a minor. We cite it here only for its historical significance as it relates to juvenile sentencing. In *Leon Miller*, our supreme court, once again considered the characteristics of youthful offenders in the context of Illinois's proportionate penalties clause. In affirming the trial court's judgment that the multiple murder sentencing statute was unconstitutional as applied to the juvenile defendant, the court stated that its decision was consistent "with the longstanding distinction made in this state between adult and juvenile offenders." *Id.* at 341-43. The court noted that Illinois had led the nation with its policy towards the treatment of juveniles in first forming the juvenile court, and "traditionally, as a society *** recognized that young defendants have greater rehabilitative potential." *Id.* at 341-42.

¶ 52    Obviously, neither *Bradley* nor *Leon Miller* rested on the recent published research on brain science. In neither case does the court cite to any scientific authority for its stated distinction between juveniles and adults for sentencing purposes. Yet, the ultimate disposition in both cases is rooted in that distinction. We acknowledge that sentencing norms continue to change to reflect findings based on the recent brain research and there is value in understanding the development of the human brain for purposes of the developing law. As our supreme court noted in *Leon Miller*, " '[t]his distinction may well be taken into consideration by the legislative power in fixing the punishment for crime, both in determining the method of inflicting punishment and in limiting its

quantity and duration.' " *Leon Miller*, 202 Ill. 2d at 342 (quoting *People ex rel. Bradley*, 148 Ill. at 423). Although illuminating, in light of *Bradley*, we cannot go so far as to say that until *Miller*'s acknowledgment of recent brain science, an age-based proportionate penalties claim was either unknown or unavailable here in Illinois. *Bradley* stands as Illinois's earliest example of our courts' recognition that minors' characteristics are distinct from those of mature adults. Thus, defendant's argument that he could not have raised his proportionate penalties claim in his first postconviction petition due to the unavailability of *Miller* and the cases that followed must fail.

¶ 53    In *Dorsey*, the juvenile defendant, who was convicted for one count of first degree murder and two counts of attempted first degree murder committed when he was 14 years old, sought leave to file a successive postconviction petition. 2021 IL 123010, ¶¶ 4, 5, 19. In the petition, he argued that his 76-year aggregate sentence violated the eighth amendment and the proportionate penalties clause. *Id.* ¶ 24. Before our supreme court, the defendant additionally argued, in the alternative, that his sentence nonetheless violated the proportionate penalties clause pursuant to *Miller* and Illinois's longstanding recognition of the special status of children. *Id.* ¶ 68. The court rejected the defendant's claim for multiple reasons. The court first determined that the claim was forfeited where it was not included in his petition and barred by *res judicata* because he previously raised a proportionate penalties argument on direct appeal. *Id.* ¶¶ 70-73. Notwithstanding that determinative ruling, the court additionally held the defendant could not establish cause for his failure to raise the claim in his initial postconviction petition. *Id.* ¶ 74. The court stated that "*Miller*'s unavailability prior to 2012 at best deprived [the] defendant of 'some helpful support' for his state constitutional claim, which is insufficient to establish 'cause.' " *Id.*[9]

---

[9] In *People v. Winters*, we recognized that our supreme court's opinion in *Dorsey* regarding the cause requirement for successive postconviction petitions could be regarded, not merely as *dictum,* but

¶ 54    In rejecting the defendant's *Miller*-based claim, the court cited *People v. LaPointe*, 2018 IL App (2d) 160903, a case out of our sister jurisdiction. Briefly, in *LaPointe*, the defendant requested leave to file a successive postconviction petition alleging that his life sentence for murder violated both the eighth amendment and the proportionate penalties clause. 2018 IL App (2d) 160903, ¶ 1. Like here, the defendant argued that he established cause because *Miller* was issued after he was sentenced and applied retroactively to his case. *Id.* ¶ 56. The court explained that the defendant had established cause for his eighth amendment claim because *Miller* had created a "new legal right." *Id.* ¶¶ 57-58. However, the court continued that his proportionate penalties claim did not "rest on the new substantive legal rule that *Miller* created" and thus his proportionate penalties argument was rejected. *Id.* The court stated that the clause was "very much in existence" when his first petition was filed and the defendant had the materials necessary "to assemble an argument that his sentence was unconstitutionally severe in light of his youth[.]" *Id.* ¶¶ 55, 57. Additionally, the nonexistence of *Miller* "merely deprived [the] defendant of some helpful support" for his claim, which was insufficient to create cause. *Id.* ¶ 59. The court rejected the proposition that all caselaw written in support of a new legal rule applies retroactively and establishes cause for successive postconviction petitions, finding that doing so would result in severely weakening section 122-1(f) of the Act. *Id.*

¶ 55    Prior to *Dorsey*, there had been a clear split of authority on the question of cause with respect to proportionate penalties claims asserted by young adult defendants. See, *e.g.*, *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 46; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 31; *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 108; *People v. Ross*, 2020 IL App (1st)

---

judicial dictum and that, as such, it must be followed. 2021 IL App (1st) 191625-U, ¶ 51, pet. for leave to appeal pending, No. 128120 (filed Jan. 27, 2022).

171202, ¶ 21 (all holding that a defendant, relying on the principles of *Miller* and its progeny, establishes cause for filing a successive postconviction petition where those cases had not been decided at the time the defendant filed his initial postconviction petition); but see *LaPointe*, 2018 IL App (2d) 160903; *People v. Bilski*, 2021 IL App (2d) 190779-U, ¶¶ 21-27; *People v. Hernandez*, 2021 IL App (2d) 190112-U, ¶¶ 45-47; *People v. Hoover*, 2019 IL App (2d) 170070, ¶ 37 (all of which hold that *Miller* and its progeny does not serve as cause to satisfy the cause and prejudice test).

¶ 56    *Dorsey* appears to have resolved the split. Over the course of the past year, in nearly every appellate court district, we have consistently rejected successive postconviction petitions for lack of cause where the young adult defendant's claim is based on the proportionate penalties clause. See *People v. Caballero*, 2022 IL App (1st) 181747-U, ¶¶ 31-38; *People v. Hemphill*, 2022 IL App (1st) 201112, ¶¶ 30-31; *People v. Knight*, 2022 IL App (1st) 210026-U, ¶¶ 15-17; *People v. Knox*, 2022 IL App (2d) 200757-U, ¶¶ 19, 22; *People v. Torres*, 2022 IL App (1st) 201014-U, ¶¶ 18-19; *People v. Harris*, 2022 IL App (1st) 200697-U, ¶¶ 33-34; *People v. Shaw*, 2022 IL App (3d) 200003-U, ¶¶ 32-35; *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 72; *People v. Winters*, 2021 IL App (1st) 191625-U, ¶¶ 44-51; *People v. Howard*, 2021 IL App (2d) 190695, ¶ 39; *People v. Thompson*, 2021 IL App (4th) 200237-U, ¶¶ 35-37; *People v. Haines*, 2021 IL App (4th) 190612, ¶¶ 44-47; *People v. Summers*, 2021 IL App (4th) 190891-U, ¶¶ 24-25. Although we are not bound to follow the holdings of our sister jurisdictions (see *O'Casek v. Children*'s *Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)), it is axiomatic that we enjoy no such discretion regarding decisions rendered by our supreme court (see *People v. Artis*, 232 Ill.2d 156, 164 (2009)). Accordingly, pursuant to *Dorsey*, we hold that defendant cannot establish cause for his *Miller-*

based proportionate penalties claim. Having so concluded, we need not address the State's several arguments in support of affirmance.

¶ 57                                    2. Prejudice

¶ 58    Under the Act, a defendant shows prejudice for his successive postconviction petition where he has demonstrated "that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 722 ILCS 5/122-1(f) (West 2018). Having determined that defendant cannot satisfy the cause prong of the cause-and-prejudice test, we need not consider prejudice.

¶ 59                                  III. CONCLUSION

¶ 60    Because defendant's petition cannot satisfy the cause-and-prejudice requirement pursuant to section 122-1(f) of the Act, the trial court's denial of defendant's motion for leave to file a successive postconviction petition was proper. See *Smith*, 2014 IL 115946, ¶ 35. For the reasons stated, we affirm the judgment of the circuit court.

¶ 61    Affirmed.